**STATE of Missouri, Respondent,**

v.

**Kenneth R. CARR, Appellant.**

**No. WD 58465.**

Missouri Court of Appeals,
Western District.

May 29, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 3, 2001.

Application for Transfer Denied
Aug. 21, 2001.

Sarah N. Weber, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., and EDWIN H. SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

Kenneth R. Carr appeals the judgment of his convictions in the Circuit Court of Platte County, after a jury trial, for burglary in the second degree, § 569.170,[1] and felony stealing, § 570.030, RSMo Supp. 1998, for which he was sentenced, as a prior and persistent offender, § 558.016, to concurrent terms of twenty years imprisonment in the Missouri Department of Corrections.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in allowing testimony regarding his fingerprints, which were taken by the Johnson County Sheriff's Department in 1988 in connection with an arrest unrelated to the charges and convictions in this case, because it constituted inadmissible evidence of uncharged crimes. In Point II, he claims that the trial court plainly erred in failing to declare, *sua sponte*, a mistrial when an investigating police officer testified on cross-examination by the defense, with respect to a photographic lineup conducted by the police, that the photograph of the appellant that was used in the lineup was provided by the Kansas City, Kansas, Police Department because the reference to the source of the appellant's picture violated the trial court's ruling on his motion *in limine* prohibiting the State or its witnesses from such references and because it was inadmissible evidence of uncharged crimes.

We affirm.

## Facts

On February 8, 1999, at approximately 8:00 a.m., Howard Hey left his home at 9500 Northwest Amity in Kansas City, Platte County, Missouri, to attend a funeral. He left the back door locked, but could not lock the front door because the lock was broken. He returned home at approximately 11:30 a.m. and noticed an unfamiliar vehicle parked in his driveway. After parking his vehicle, he walked to the front door, where, upon opening it, he saw a stranger standing in front of him. Startled, he asked the intruder, "What's goin' on here?" The intruder asked Hey the same question and walked past him, heading for the vehicle that Hey had noticed upon his return home. The exchange between the two men lasted only a few seconds, but Hey was able to observe that the intruder was an African–American, between 35 and 40 years of age, approximately six feet tall, weighing over 200 pounds, with braids in his hair. He also noticed that the vehicle in which the intruder drove off was an "oddish-grayish, black" '80s model, which bore a Missouri license plate with the number, JRM-103, which he wrote down on a piece of paper he had in his pocket.

After the intruder's vehicle drove away, Hey immediately entered his home to see if anything had been stolen. He noticed two phones missing. Unable to call the police from his home, he borrowed a phone from a friend and called the police to report the crime. The police arrived at Hey's residence 35 minutes later, at which

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

time Hey gave them a statement, including a description of the intruder and the license plate number of his vehicle. Later, Hey went down to the police station, where he viewed a photographic lineup of suspects, but was unable to identify any as being the man who had burglarized his home.

Sometime after reporting the crime to the police, Hey discovered that there were other items missing from his home, including a VCR, microwave, chain saw, toaster-oven, and television. His wife also noticed that she was missing several items of jewelry. Hey estimated the value of the stolen items to be well over a thousand dollars.

During the investigation of the burglary, Officer Dennis Gene Mason, Jr., of the Kansas City, Missouri, Police Department (KCPD), recovered several sets of fingerprints from objects in Hey's home, which were subsequently forwarded to the Fingerprint Identification Unit (FIU). Detective Randall Rund, also of the KCPD, ran a check on the license plate number of the suspect's vehicle, and discovered that it was registered to a 1986 Mercury owned by Ophelia Jackson. He contacted Jackson and verified that she was still the owner of the vehicle. He also asked her who had the vehicle on the day of the burglary. She replied that her son, the appellant, had borrowed the vehicle. Based upon this information, the fingerprints taken from Hey's residence were compared by the FIU with a set of fingerprints taken from the appellant by the Johnson County Sheriff's Department in September of 1988, and were found to match.

On November 19, 1999, the State charged the appellant in the Circuit Court of Platte County, Missouri, by way of indictment, with the class C felony of burglary in the second degree, § 569.170, and the class C felony of stealing, § 570.030, RSMo Supp. 1998. On January 7, 2000, the State filed an information in lieu of indictment, charging the appellant as a prior and persistent offender, § 558.016. On February 1, 2000, the State filed a motion for an order directing the appellant to be fingerprinted, and on February 8, the appellant filed his suggestions in opposition to the State's motion. In its motion, the State argued that, due to the lapse of ten years, it was unlikely that the officer who had obtained the appellant's fingerprints in 1988 would be able to identify the appellant as the source of the prints, and that, therefore, a new set of prints was necessary in order to ensure that the fingerprints found at the scene of the crime belonged to the appellant. On February 17, 2000, the court sustained the State's motion and entered its order directing the appellant to be fingerprinted. That same day, the appellant was fingerprinted, which prints were found to match those lifted from the victim's residence.

On February 24, 2000, the appellant filed various pretrial motions *in limine.* In one motion, he sought to exclude, *inter alia,* his 1988 fingerprint card. In another, he sought to prohibit, *inter alia,* the State's witnesses from referring to the photograph of the appellant used in the photographic lineup as being a police photograph. The court overruled the appellant's motion *in limine* as to the 1988 fingerprints. As to the other motion, the State agreed that it would not refer to the photograph of the appellant as a "police photograph" or a "mug shot."

The appellant's jury trial commenced on February 28, 2000, in the Circuit Court of Platte County before the Honorable Abe Shafer. At the close of the State's and at the close of all of the evidence, the appellant filed motions for judgment of acquittal, both of which were denied. On February 29, 2000, the jury found the appellant guilty as charged. On March 21, 2000, the

appellant filed his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which he later amended. His motion was subsequently overruled and on April 6, 2000, the trial court sentenced the appellant, as a prior and persistent offender, to two concurrent terms of twenty years imprisonment.

This appeal follows.

## Standard of Review

As to the appellant's claim of error in Point I, the record reflects that the appellant failed to object to the challenged testimony regarding his 1988 fingerprints. As such, as the State contends, his claim of error in Point I with respect to the admission of that testimony was not preserved for appellate review, limiting our review, if any, to plain error review, as provided in Rule 30.20.[2] *State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App.2000). As to his claim of error in Point II, the appellant concedes that he failed to preserve it for appellate review and requests plain error review.

■ Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." " 'The plain error rule should be used sparingly and does not justify a review of every [alleged] trial error that has not been properly preserved for appellate review.' " *State v. McMillin*, 783 S.W.2d 82, 98 (Mo. *banc* 1990) (*quoting State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983)); *see also State v. Silvey*, 894 S.W.2d 662, 670 (Mo. *banc* 1995).

■ Giving the language in the rule its plain and ordinary meaning, we interpret it as providing for a two-step process in determining plain error review. Under the rule, the first step involves an examination to determine whether the claim for review "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' " or in other words, whether on the face of the claim, "plain error" has, in fact, occurred. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. *banc* 1995). In the absence of such a determination, a court should "decline to exercise its discretion" to review a claim of error under Rule 30.20. *Id.* The rule makes it clear that not all prejudicial error--that is, reversible error--can be deemed plain error. Plain errors are those which are "evident, obvious and clear." *State v. Bailey*, 839 S.W.2d 657, 661 (Mo. App.1992) (citation omitted). "If plain error is found on the face of the claim, then the rule authorizes, as a matter of court discretion, a second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice." *State v. Dowell*, 25 S.W.3d 594, 606 (Mo.App. 2000).

## I.

In Point I, the appellant claims that the trial court erred in allowing testimony regarding his fingerprints that were taken by the Johnson County Sheriff's Department in 1988 in connection with an arrest unrelated to the charges and convictions in this case because it constituted inadmissible evidence of uncharged crimes. Specifically, he claims that the testimony associated him with crimes other than those with which he was charged, and that it was not legally relevant because its probative value was slight while its prejudicial effect was great in that it was, at best, simply cumulative of other evidence in the case. In this regard, he points to the fact that the State introduced testimony comparing the latent

---

2. All rule references are to the Missouri Rules of Criminal Procedure (2001).

prints taken from the scene of the crime with a more recent set of his fingerprints, which were taken on February 17, 2000, and showed 53 points of comparison, as opposed to only 30 points of comparison for the 1988 prints. From this, he contends that it can be inferred that the State's primary purpose in introducing testimony concerning the 1988 prints was to inject the issue of his prior criminal activity so as to prejudice the jury's deliberations.

■ "The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes." *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993) (citation omitted). If, however, evidence of prior crimes or misconduct is both logically and legally relevant to prove the charged crime, and not just the propensity of the defendant to commit such crimes, it is admissible. *Id.* (citations omitted). As the State points out, the admission of evidence only violates the general rule as to uncharged crimes evidence " 'if it shows that the defendant has committed, been accused of, been convicted of or definitely associated with another crime or crimes.' " *State v. Butler,* 24 S.W.3d 21, 34 (Mo.App.2000) (*quoting State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc 1989)). " 'Vague references' are not clear evidence associating a defendant with other crimes." *Id.* In this regard, the State contends that the challenged fingerprint testimony in this case did not reflect that the appellant had committed, had been accused of, had been convicted of, or definitely associated him with another crime or crimes. We agree.

■ "Fingerprint cards, in and of themselves, do not constitute evidence of a prior crime." *State v. Morrow,* 968 S.W.2d 100, 111 (Mo. banc 1998). In *Morrow,* the ap-

pellant argued that the neutrality of the fingerprint cards in question was compromised by the testimony of the "intake officer," who testified, *inter alia,* that the defendant's name for the fingerprint card was obtained off the "booking sheet." *Id.* The court held that despite the officer's testimony, because the appellant's fingerprint cards "did not mention any crimes," they were not rendered inadmissible as evidence of uncharged crimes. *Id.* at 112. Likewise, in *State v. Perryman,* 851 S.W.2d 776, 779 (Mo.App.1993), the court, in upholding the trial court's admission of testimony concerning the defendant's fingerprints taken in connection with a prior incident, stated, "[a]n examination of the challenged testimony reveals that the officer gave no indication that defendant was fingerprinted pursuant to an arrest or conviction of a crime. The officer's testimony was neutral, and did not constitute evidence of prior crimes or offenses."

In the case at bar, the 1988 fingerprint card did not reflect the reason for the appellant's being fingerprinted. In addition, although Deputy Jeffrey Roden, during his foundational testimony for the admission of the 1988 fingerprint card, identified the card and testified that he took it in his capacity as a deputy for the Johnson County, Kansas, Sheriff's Department, he at no time testified as to the purpose for the appellant's being fingerprinted. Likewise, Kathleen Hentges, the certified fingerprint examiner called by the State, never testified about the purpose for fingerprinting the appellant in 1988. Her testimony as to the 1988 prints was limited solely to her comparisons of those prints with the latent prints taken from the scene of the charged crimes. Hence, the challenged testimony of Deputy Roden and Hentges concerning the 1988 fingerprint card would not constitute evidence of uncharged crimes,

*Morrow,* 968 S.W.2d at 112, such that on its face the appellant's claim of error in Point I is insufficient to cause us to exercise our discretion in reviewing for plain error.

■ Even assuming, *arguendo,* that the testimony at issue did constitute evidence of uncharged crimes, which was not legally relevant, such that it was inadmissible, on the face of the appellant's claim it is apparent that he would not be able to show that manifest injustice or a miscarriage of justice resulted therefrom. This is so in that the evidence of the appellant's guilt, which he does not challenge, is overwhelming. In this respect, a careful review of the record discloses that there was evidence adduced at trial that the license plate number recorded by the victim of the intruder's vehicle belonged to a vehicle owned by the appellant's mother, who testified at trial that her son was in possession of the same on the day of the crime. In addition, Hentges testified that, in order to identify two sets of fingerprints as being from the same person, she normally only requires 12 points of comparison, but that she found 53 points of comparison between the appellant's 2000 prints and the latent prints taken from the scene. "When guilt is established by overwhelming evidence, no injustice or miscarriage of justice results requiring relief under the [plain error] rule." *State v. Albanese,* 9 S.W.3d 39, 54 (Mo.App.1999) (citation omitted).

Point denied.

## II.

In Point II, the appellant claims that the trial court plainly erred in failing to declare, *sua sponte,* a mistrial when Detective Rund testified on cross-examination by the defense, with respect to a photographic lineup conducted by the police, that the photograph of the appellant that was used was provided by the Kansas City, Kansas, Police Department because the reference to the source of the appellant's picture violated the trial court's ruling on his motion *in limine* prohibiting the State or its witnesses from such references and because it was inadmissible evidence of uncharged crimes. We disagree.

The record reflects that the appellant filed a motion *in limine* seeking to prohibit at trial any reference to the origin of his photograph that was used in the police photographic lineup. The State did not oppose the motion and agreed that its witnesses would not refer to the photograph as a police photograph. With respect to the motion, although not expressly sustaining it, the trial court stated, "[W]e won't expect a photograph to be referred to as a police photograph or a mug shot." As to the photograph, during cross-examination by the defense of Detective Rund concerning the photographic lineup, he was asked by counsel: "It's my understanding that you obtained a recent photograph of Mr. Carr?" In response, Detective Rund testified: "Well, I don't know how recent it was. It was provided to me by the Kansas City, Kansas, Police Department. Without looking, I don't know how current it was." Defense counsel did not immediately object, but waited until her questioning of Detective Rund was concluded and then moved for a mistrial on the basis that his reference to the source of the appellant's photograph violated the trial court's ruling on the appellant's motion *in limine.* The motion for a mistrial was denied.

■ Rulings on motions *in limine* are interlocutory in nature and are not subject to appellate review. *Dowell,* 25 S.W.3d at 601. Such motions preserve nothing for appellate review, *id.,* and thus, to preserve a claim of error for appellate review as to the admission of evidence, the introduction of which was initially prohibit-

ed by the trial court's sustaining a motion *in limine,* the party seeking to exclude the evidence must object at trial to its admission, as in the case of any other evidence sought to be excluded. *State v. Nunley,* 992 S.W.2d 892, 894 (Mo.App.1999). Here, the appellant does not challenge the trial court's ruling on his motion for a mistrial and concedes in his brief that he failed to timely object to the challenged testimony, but rather requests plain error review under Rule 30.20 as to his claim that the challenged testimony of Detective Rund was inadmissible evidence of uncharged crimes, which necessitated the trial court's granting a mistrial *sua sponte.*

■■■■■ It is well settled that a "declaration of a mistrial in a criminal case is 'a drastic remedy warranted only by the most compelling of circumstances.' " *State v. Varvera,* 897 S.W.2d 198, 201 (Mo.App. 1995) (*quoting State v. Johnson,* 700 S.W.2d 815, 819 (Mo. *banc* 1985)). Thus, it should only be utilized in the case of grievous error, which cannot be remedied otherwise. *Id.* (*citing State v. Beal,* 470 S.W.2d 509, 516 (Mo. *banc* 1971)). Appellate courts are particularly wary of claims that a trial court erred in failing to declare a mistrial *sua sponte. State v. Ard,* 11 S.W.3d 820, 830 n. 17 (Mo.App.2000) (*citing State v. Derrick,* 965 S.W.2d 418, 419-20 n. 1 (Mo.App.1998)). "That is because generally, the double jeopardy clause of the Fifth Amendment to the Constitution of the United States bars retrial if a judge declares a mistrial in a criminal case without the defendant's request or consent." *Id.* (*citing State v. Tolliver,* 839 S.W.2d 296, 299 (Mo. *banc* 1992)).

> Consequently, a judge who declares a mistrial in a criminal case *sua sponte* may thereafter be confronted by the defendant's contention that he cannot be retried. Reversing convictions because trial courts fail to declare mistrials *sua*

*sponte* allows defendants to remain mute when incidents unfavorable to them occur during trial, gamble on the verdict, then obtain a new trial if the verdict is adverse. This puts trial courts in an untenable position and is contrary to the principle that an appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide.

*Derrick,* 965 S.W.2d at 420 n. 1 (citation omitted). Recognizing that the decision to grant a mistrial is left to the sound discretion of the trial court and an appellate court will not reverse the trial court's decision with respect thereto absent a clear showing of an abuse of discretion, *State v. Vaught,* 34 S.W.3d 293, 295 (Mo.App.2000) (citation omitted), a trial court's decision not to grant a mistrial *sua sponte* will not be reversed as plain error absent a clear showing of a manifest abuse of discretion, which resulted in manifest injustice or a miscarriage of justice.

■■■■■ As discussed in Point I, *supra,* in order for evidence to be considered evidence of uncharged crimes, there must be a clear showing that the defendant had committed, been accused of, been convicted of, or definitely associated with another crime or crimes. *Butler,* 24 S.W.3d at 34 (citation omitted). With respect to police photographs, in *State v. Tivis,* 933 S.W.2d 843, 847 (Mo.App.1996), this court recognized that "[p]olice photographs, including 'mug' shots, are considered neutral and do not, in and of themselves, constitute evidence of other crimes where inculpatory information is masked." (Citation omitted.) "[T]he mere fact that a police department previously had on file a photograph of a defendant does not lead to the inference that the defendant has committed prior crimes." *Id.* at 846 (citation omitted).

> [Police photographs] are readily admissible into evidence where all identifying

information is masked, where a defendant's identity is in issue and where admission of the [police photographs] will help a jury to determine the accuracy of the identification. The admission of a [police photograph] constitutes prejudicial evidence of other crimes *only when the [police photograph] or accompanying testimony discloses a defendant's prior arrests or convictions.*

*Id.* at 847 (citations omitted) (emphasis added). In order to show that a police photograph constitutes evidence of other crimes, where there is no accompanying evidence which discloses a defendant's prior arrests or convictions, the defendant "would have the burden of proving that all [police photographs] on file with the police department are photographs of persons who had committed prior crimes...." *State v. Depriest,* 822 S.W.2d 488, 491 (Mo. App.1991) (citation omitted). "Alternatively the defendant would have to prove that the average juror erroneously believes that persons whose photographs are on file with the police department have committed other crimes." *Id.* at 491–92 (citation omitted).

As the court pointed out in *Nunn v. State,* 755 S.W.2d 269, 272 (Mo.App.1988), usually, "[i]t is the testimony of the witness pertaining to the [police photographs] which has the potential for tainting the record." There, the court held that, where an officer testified that he saw the defendant's picture at "roll-call," there was no evidence of other crimes because the officer's testimony only *suggested* the defendant had a criminal record. *Id.* Likewise, in *State v. Howard,* 714 S.W.2d 736, 738 (Mo.App.1986), the court held that, where an officer testified that a "street crew" of police officers already knew the defendant and that he had "pulled" the defendant's photograph, such testimony did not constitute evidence of other crimes in that "there was no reference to any kind of prior criminal record of the defendant." In this regard, the court noted that the defendant's photograph "in theory, could have been obtained from services unrelated to prior criminal activity," and that "[t]he fact that some police officers knew defendant does not necessarily indicate that he [had] a prior criminal record." *Id.*

■ The testimony of Detective Rund, which the appellant challenges, does not suggest that the appellant had a prior criminal arrest or conviction or that he was involved in any prior criminal activity. As such, in order to show that his testimony was evidence of uncharged crimes, the appellant had the burden of showing that the only photographs maintained by the Kansas City, Kansas, Police Department were photographs of persons who had committed prior crimes or, in the alternative, that the "average juror erroneously believes that persons whose photographs are on file with the police department have committed other crimes." *Depriest,* 822 S.W.2d at 491-92 (citation omitted). There is nothing in the record that would satisfy this burden.

■ Even assuming, *arguendo,* that the appellant could show that the testimony in question was evidence of uncharged crimes that was inadmissible because it was not legally relevant, his claim in this point must still fail in that, on its face, it is evident that he could not show manifest injustice or a miscarriage of justice resulting from the admission of the challenged testimony. This is so in that "[w]hen guilt is established by overwhelming evidence, no injustice or miscarriage of justice results requiring relief under the [plain error] rule," *Albanese,* 9 S.W.3d at 54, and as we discussed in Point I, *supra,* there was overwhelming evidence in the record which the jury could have considered and reason-

ably found that the appellant was guilty as charged.

For the foregoing reasons, we decline plain error review. Point denied.

### Conclusion

The judgment of the circuit court convicting the appellant of burglary in the second degree, § 569.170, and felony stealing, § 570.030, RSMo Supp. 1998, is affirmed.

ULRICH, P.J., and NEWTON, J., concur.