**STATE of Missouri, Respondent,**

v.

**Theodore SOLIS, Appellant.**

**No. WD 59890.**

Missouri Court of Appeals,
Western District.

Oct. 22, 2002.

46

Rosalynn Koch, Assistant State Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Anne E. Edgington, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, P.J., and LOWENSTEIN and HARDWICK, JJ.

EDWIN H. SMITH, Presiding Judge.

Theodore Solis appeals the judgment of his convictions, after a jury trial in the Circuit Court of Benton County, for one count of robbery in the first degree, § 569.020; one count of armed criminal action (ACA), § 571.015; two counts of assault in the second degree, § 565.060; and five counts of unlawful use of a weapon, § 571.030. As a result of his convictions, the appellant was sentenced to consecutive terms in the Missouri Department of Corrections of eighteen years for robbery, ten years for ACA, five years for each count of assault, and two years for each count of unlawful use of a weapon.

In his sole point on appeal, the appellant claims that the trial court plainly erred in failing to exclude, *sua sponte*, trial testimony referring to him by his nickname "Loco" because said references were irrelevant to any legitimate issue in the case and worked to impugn his character and inflame the jury with respect to its recommendation of punishment.

We affirm.

### Facts

The appellant's convictions arose out of a robbery at the Snappy Convenience Store in Sedalia, Missouri, on August 11, 2000. At approximately 10:00 p.m., Esther Kostis had stopped by the store to visit with Dixie Baker, who was working as a clerk at the store. As the two women conversed, the appellant came into the store wearing a ski mask, waving a gun, and demanding money. Baker put her hands in the air and began walking to the cash register. The appellant then walked over to where Kostis was sitting and hit her in the mouth with his gun. Baker opened the cash register and started to remove the money, but the appellant told her that she was too slow and took the money out himself. The appellant then ripped the phone out of the wall, hit Baker in the face and on the head with the gun, and exited the store.

As the appellant was leaving, a car occupied by Angela Butler, Amanda Wade, and Wade's son Keynan, pulled into the store's parking lot. Butler, who was driving, saw the appellant emerge from the store with a gun and walk toward a red vehicle driven by a woman, who was later identified as the appellant's girlfriend, Myra Moore. The appellant shot at the car Butler was

driving, hitting it five times before leaving in his girlfriend's vehicle.

A passing motorist supplied a partial license plate number of the getaway car, which led authorities to a residence in Knob Noster, Missouri, where the appellant was arrested. Following his arrest, the appellant made both verbal and written statements admitting his guilt, stating that he was remorseful about striking the women in the convenience store.

The appellant was charged in the Circuit Court of Benton County with one count of robbery in the first degree, one count of ACA, two counts of assault in the second degree, and five counts of unlawful use of a weapon. At the appellant's jury trial, which was held on February 26–27, 2001, the State presented, *inter alia*, the testimony of Chief Deputy Gary Klote of the Johnson County Sheriff's Department and Corporal Bruce Houston of the Missouri State Highway Patrol, both of whom were present when the appellant was arrested. During the direct examination of Chief Deputy Klote by the State, he testified:

Q. Later that day after daylight did you go to a house on north Adams in Knob Noster?

A. Yes, sir, I did.

Q. Who were you looking for when you went to the house?

A. Myra Moore and an individual by the name of Loco.

Similarly, the following exchange occurred during the direct examination of Corporal Houston:

Q. Did you decide, you and other officers decide to go to a particular house in Knob Noster?

A. Yes, sir.

Q. Who were you looking for at that house?

A. A subject by the name of Solis whose nickname was Loco.

The appellant made no objection to either officer's reference to the appellant's nickname.

The only evidence offered by the appellant at trial was a letter of apology which he had written to the victims. From this, the appellant's trial counsel argued to the jury that the appellant was under extreme stress at the time he committed the crimes, and that he was remorseful for the injury he caused the victims.

After deliberating, the jury found the appellant guilty on all counts. He was subsequently sentenced to consecutive prison terms of eighteen years for robbery, ten years for ACA, five years for each conviction for assault, and two years for each conviction for unlawful use of a weapon.

This appeal followed.

## I.

■ In his sole point on appeal, the appellant claims that the trial court plainly erred in failing to *sua sponte* exclude the trial testimony of Chief Deputy Klote and Corporal Houston, referring to him by his nickname "Loco," because said references were irrelevant to any legitimate issue in the case, impugned his character and worked to inflame the jury with respect to its recommendation of punishment. Specifically, he contends that the references to his nickname cast him in an unfavorable light to the jury, "suggesting to the jury that he was known to be unstable," which resulted in its recommending harsher sentences than it would have otherwise recommended.

■ The appellant concedes that he did not properly preserve his claim of error for appellate review because he failed to object to the testimony at trial or raise the claim in his motion for a new trial, but

asks for plain error review under Rule 30.20. Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Carr*, 50 S.W.3d 848, 853 (Mo.App.2001). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a "plain" error, which resulted in manifest injustice or a miscarriage of justice. *State v. Dudley*, 51 S.W.3d 44, 53 (Mo.App.2001). "Plain" error for purposes of Rule 30.20 is error that is evident, obvious and clear. *State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App. 2000).

■ If the court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court committed error, affecting substantial rights, that was evident, obvious and clear. *Hibler*, 21 S.W.3d at 96. As in the case of regular error, not every plain error requires reversal. *Carr*, 50 S.W.3d at 853. In the case of regular error, to be reversible, the error must have prejudiced the appellant. *State v. Taylor*, 67 S.W.3d 713, 715 (Mo.App.2002). Likewise, in the case of plain error, the error must have prejudiced the appellant, except that such prejudice must rise to the higher level of manifest injustice or a miscarriage of justice. *State v. Cole*, 71 S.W.3d 163, 170 (Mo. banc 2002). Thus, even if obvious and clear error is found, the court then must determine whether manifest injustice or a mis-

carriage of justice resulted therefrom. Because the appellant's claim does not on its face convince us that substantial grounds exist for believing that the trial court's failure to exclude, *sua sponte*, the two isolated references at trial to the appellant's nickname constituted obvious and clear error that resulted in manifest injustice or a miscarriage of justice to the appellant, we decline plain error review.

■ The obvious danger in allowing references at trial to a criminal defendant by his or her nickname is that such references, in and of themselves, could allow the jury, in its deliberations, to consider matters that it otherwise was prohibited from considering. *See State v. Pitchford*, 324 S.W.2d 684, 688 (Mo.1959) (recognizing the possibility that a defendant's nickname could indicate an "unsavory reputation"). However, references to nicknames have been allowed to aid in the identification of the defendant. *State v. Nettles*, 10 S.W.3d 521, 526 (Mo.App.1999).

While it is arguable from the record that the State was not attempting to elicit from the witnesses in question the appellant's nickname for any specific purpose, that the references were simply spontaneous, it is also arguable that the references to the appellant's nickname aided in his identification, such that they did not constitute error, plain or otherwise. Deputy Klote testified that based on his investigation of the crime, he determined that he was looking for a suspect named "Loco." At that point in time, the record indicates that he apparently did not know the suspect's name. Corporal Houston, who testified after Deputy Klote, indicated that his investigation disclosed that the suspect's name was "Solis," who was a.k.a. "Loco," which verified that the suspect disclosed by Corporal Houston's investigation was the same suspect disclosed by Deputy Klote's investigation. Hence, on the sur-

face, the nickname references were arguably relevant and probative on the issue of the appellant's identification and how the investigation of the crime led to his being the primary suspect. As such, we cannot say that the appellant's claim facially establishes substantial grounds for believing that an obvious and clear error was made in the trial court's failure to, *sua sponte*, exclude the trial references to the appellant's nickname justifying plain error review under Rule 30.20.

■ Even if we found an apparent plain error in the trial court's failure to *sua sponte* exclude the trial references to the appellant's nickname, we still would decline plain error review in that it is not apparent to us on the face of the appellant's claim that manifest injustice or a miscarriage of justice resulted therefrom. In that regard, the appellant is not contending that the nickname references in any way affected the jury's deliberations on his guilt. Obviously, such an argument would have been futile in that there is overwhelming evidence in the record on which to convict. Rather than argue manifest injustice or a miscarriage of justice with respect to the guilt phase of his trial, the appellant argues that the nickname references unduly influenced the jury's deliberations with respect to its recommendations of punishment, which were followed by the trial court. This fact is made obvious by the appellant's brief stating:

[The appellant] did not deny guilt, but he did attempt to obtain a shorter sentence by showing the jury that he was acting under stress and was remorseful. The state's actions prejudiced his efforts by suggesting to the jury that he was known to be unstable. The highly inflammatory use of the evidence prejudiced [the appellant] in his efforts to obtain leniency resulting in a stiff sentence by the jury, and denied him a fundamentally fair trial in this respect.

■ In effect, the appellant is contending that the sentences imposed by the trial court are excessive in that, in sentencing him, the court relied on the recommendations of the jury, which recommendations were improperly influenced by the references at trial to his nickname. A claimed excessive sentence is reviewable by the trial court upon the request of the defendant in an after-trial motion to reduce it. *State v. McClanahan*, 954 S.W.2d 476, 482 (Mo.App.1997). The trial court's decision in that regard is subject to review on appeal for an abuse of discretion. *Id.* "The appellate court will not interfere with the trial court's decision absent a showing that 'passion and prejudice so clearly appears from the record that the appellate court can confidently say the trial court abused its discretion by declining to reduce the punishment.'" *Id.* (*citing State v. Johnson*, 549 S.W.2d 348, 351 (Mo.App. 1977); *State v. Mucie*, 448 S.W.2d 879, 889 (Mo.1970), *cert. denied*, 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271 (1970)). Here, however, as discussed, *supra*, the appellant did not raise below the issue of excessive sentences resulting from the passion and prejudice of the jury, which he contends were evoked by the nickname references at trial. Thus, rather than reviewing for an abuse of discretion the trial court's failure to reduce the alleged excessive sentences recommended by the jury, our review, if any, is limited to plain error, requiring the appellant to prove that manifest injustice or a miscarriage of justice resulted with respect to his sentencing from the nickname references. Hence, he has the burden of showing on appeal that the nickname references resulted in his receiving harsher sentences than the record would otherwise support as being fair and reasonable and that the harsher sentences were solely the product of passion or prejudice.

There were only two isolated references to the appellant's nickname, on which the State did not dwell or argue as a basis for more severe punishment. In addition, there was substantial evidence in the record from which the jury would have been moved to recommend the sentences recommended and which would have caused the trial court to follow those recommendations. In that regard, the record reflects that, in the course of a robbery, the appellant gratuitously struck two people in the face with a gun, and then, while making his getaway, gratuitously fired at least five rounds into a car parked in the parking lot, which was occupied by two women and a child. The impact of the two isolated references to the appellant's nickname on the sentences he received would obviously pale in comparison to the impact of this evidence of wanton violence. Thus, we cannot say that the appellant has made an apparent showing of manifest injustice or a miscarriage of justice justifying plain error review under Rule 30.20. *Dudley,* 51 S.W.3d at 53.

Point denied.

### Conclusion

The judgment of the circuit court convicting the appellant of one count of robbery in the first degree, § 569.020, one count of ACA, § 571.015, two counts of assault in the second degree, § 565.060, and five counts of unlawful use of a weapon, § 571.030, is affirmed.

LOWENSTEIN and HARDWICK, JJ., concur.