

# In the Missouri Court of Appeals
# Eastern District
## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111877 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | 2022-CR01677-01 |
| | ) | |
| DEION ANTHONY WHALEN, | ) | Honorable Rex M. Burlison |
| | ) | |
| Appellant. | ) | Filed: September 17, 2024 |

Before Lisa P. Page, P.J., Kurt S. Odenwald, and Rebeca Navarro-McKelvey, J.

Deion Whalen (Whalen) appeals from the trial court's judgment entered upon a jury's verdict convicting him of first-degree involuntary manslaughter and armed criminal action. We affirm.

## Background

The following facts most favorable to the verdict were elicited at trial. Following an argument on the street concerning a car accident, Victim was shot and killed. Witnesses at the scene identified Whalen as the individual who shot Victim. Whalen was ultimately charged with second-degree murder and armed criminal action. A jury found him guilty of the lesser-included offense of first-degree involuntary manslaughter and armed criminal action. He was sentenced to consecutive prison terms of ten years for each offense. This appeal follows.

**Discussion**

In his first point on appeal, Whalen argues the court plainly erred in failing to *sua sponte* declare a mistrial when the court building was struck by gunfire during the trial. In his second point, Whalen argues the trial court plainly erred denying his objection to the State's peremptory strike of Juror No. 135, an African-American female, on the basis of *Batson v. Kentucky*, 476 U.S. 79 (1986). He claims the reasons the State gave for striking Juror No. 135 were pretextual, and the State did not strike a similarly situated Caucasian woman on the panel. In his third point, Whalen claims the trial court erred in overruling his objection to the prosecutor's misstatement of law regarding self-defense during closing argument. In his fourth and final point, Whalen contends the court plainly erred in allowing the State to repeatedly elicit testimony from one of the detectives investigating the incident (Detective) regarding the credibility of the witnesses he interviewed.

*Standard of Review*

Whalen concedes points one, two, and four are not preserved for appellate review because they were neither raised at trial, nor included in his motion for new trial. Thus, he requests plain error review of his claims. Pursuant to Rule 30.20,[1] in our discretion we may review plain errors affecting substantial rights if we find the alleged errors resulted in a manifest injustice or miscarriage of justice. To grant plain error relief, there must be error that is evident, obvious, and clear. *State v. Schneider*, 678 S.W.3d 493, 502 (Mo. App. E.D. 2023). We review these points for plain error together before reaching point three.

---

[1] All references to Rules are to Missouri Supreme Court Rules (2023).

## Point I – Mistrial

In point one on appeal, Whalen claims the trial court plainly erred in failing to *sua sponte* declare a mistrial when the court building was struck by gunfire during the trial.

### *Analysis*

A mistrial is a drastic remedy. *Schneider*, 678 S.W.3d at 503. It should be employed only under the most extraordinary circumstances. *Id*. (internal quotations omitted). The decision to grant a mistrial is left to the sound discretion of the trial court because it is in the best position to assess the impact of any potential incident. *Id*. The court should grant a mistrial only in the case of a "grievous error, which cannot be remedied otherwise." *State v. Carr*, 50 S.W.3d 848, 856 (Mo. App. W.D. 2001). "Moreover, a court should declare a mistrial *sua sponte* 'only in exceptional circumstances.'" *State v. Boyd*, 659 S.W.3d 914, 926 (Mo. banc 2023) (quoting *State v. Clay*, 975 S.W.2d 121, 134 (Mo. banc 1998)) (emphasis added).

The record reflects on the second day of trial the court addressed the jury as follows:

THE COURT: All right. Ladies and gentleman, we are going to take our afternoon break. So, ladies and gentlemen, you may have noticed that there was a little action going on and I need to explain to you now because we are going to go on break. I'm going to ask you to stay on this floor and not leave this floor.

We have had some gunshots that have hit the building and you may have heard what you thought was a radiator, maybe 1:45 today. The building is secure, the streets are secure. The building has extra security here. So I made the decision that I felt that with what the sheriff told me that everybody is secure, we'll just ask you to stay on this floor. I'm not sure they'll let you off this floor, okay. But I just wanted to give you that information just so you kind of are aware what's going on.

Other than the initial incident, they have an idea where it came from. They have an idea of who did it and they're at least, I understand, chasing a couple guys.

Nonetheless, stay on this floor. If you need anything, just let the deputy know and we'll try to get it brought up to you.

I think there is still some stuff probably this morning to eat and some water.

3

So we're going to go to about ten minutes to 4:00, gives about 20 minutes. Again, let me remind you, please keep an open mind until all of the evidence is in. Do not discuss this case among yourselves or with others, or permit anyone to discuss it within your hearing. And once again, please remove yourself and report any contact that you have.

Thanks for your work. See you in 20 minutes.

Whalen did not request any relief at the time, and the trial proceeded after the break. It appears from the record the jury may not have even been initially aware the noise was gunfire outside during the trial, but instead thought it was a sound from a radiator. The court, acting out of an abundance of caution, informed the jury of the incident and assured them they were safe. There is no indication the incident had anything to do with Whalen or anyone associated with him. There is no record of any concerns expressed by the jury, counsel, or any other court staff as a result of the incident. Consequently, Whalen cannot demonstrate any evident, obvious, or clear error from the trial court's failure to *sua sponte* declare a mistrial after the incident, and thus, no plain error occurred. Point one is denied.

### Point II – *Batson* Challenge

In point two on appeal, Whalen argues the trial court plainly erred in denying his *Batson* challenge to the State's peremptory strike of Juror No. 135, an African-American female. He claims the State's reasons were pretextual and the State did not strike a similarly situated Caucasian female juror.

### *Analysis*

The Equal Protection Clause guarantees that a potential juror cannot be peremptorily challenged solely on the basis of the juror's gender, ethnic origin, or race. *State v. Thomas*, 407 S.W.3d 190, 196 (Mo. App. E.D. 2013) (citing *State v. Marlowe*, 89 S.W.3d 464, 468 (Mo. banc 2002)). A *Batson* objection requires three steps. *Id*. (citing *Batson*, 476 U.S. 79). First, the

defendant must object to the State's peremptory strike as improper. *Id*. Next, the State must respond with a race-neutral reason for the strike that is more than a simple denial of the allegation of discriminatory purpose. *Id*. If the State can articulate a reasonable race-neutral justification for the strike the burden then shifts to the defendant to show the reason is merely pretextual and the strike was racially motivated. *Id*. Upon review we grant the trial court great deference because the court's findings are largely dependent upon an evaluation of credibility and demeanor. *Id*. (citing *State v. Gray*, 887 S.W.2d 369, 384 (Mo. banc 1994).

A key consideration in determining pretext is whether the State's explanation is plausible in light of the totality of facts and circumstances surrounding the case. *Id*. There are several factors for the trial court to consider, including whether there were similarly situated white jurors who were not struck. *Id*. A defendant can present a "side-by-side" comparison of an otherwise similar member of another race on the venire panel who is ultimately permitted to serve. *State v. Bateman*, 318 S.W.3d 681, 689-90 (Mo. banc 2010) (quoting *State v. McFadden*, 191 S.W.3d 648, 651 (Mo. banc 2006)).

Here, Whalen challenged the State's peremptory strike of Juror No. 135. Upon Whalen's *Batson* challenge, the prosecutor responded that Juror No. 135 was talking to the juror seated next to her for "a large portion of both inquiries," leading the State to believe she was not paying close attention to the inquiry and would have trouble paying attention to the evidence at trial. The prosecutor said she was also striking the juror with whom she was speaking because she believed they may have been talking about the inquiry or potential questions. This was a reasonable, race-neutral explanation for striking Juror No. 135. It then became Whalen's burden to show the State's reason was merely pretextual and the strike was racially motivated. *Bateman*, 318 S.W.3d at 692 (quoting *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992)).

Whalen responded:

I will say [Juror No. 135] didn't say much, certainly nothing offensive. There was no record made of any conversation she was having throughout the voir dire, even though there was records [sic] made Juror 28 was sleeping.

So you think there would have been a record of her made of her noncompliance to paying attention at the same time that previous objection was made with the Court.

Secondly, Judge, I don't think that because that they have a reason to overcome a *Batson* challenge that we didn't make necessarily means that their strike for Juror 135 is pretextual.

There was a white juror similarly situation, [ ], who didn't say much the entire trial and she is still impaneled on this jury as of right now.

Whalen acknowledges that the failure to make a record of perceived inattentiveness does not constitute reversible error. While we agree this is not necessarily error, we strongly admonish counsel to promptly bring such concerns to the court to make a complete record as with Juror No. 28, who was sleeping. *State v. Miller*, 162 S.W.3d 7, 17 (Mo. App. E.D. 2005) (internal citations omitted).

Whalen further argued another juror, a Caucasian female, also did not "say much" but was not stricken. However, lack of participation was not the reason given by the State for striking Juror No. 135. Instead, it was her conversation with the juror seated next to her throughout a "large portion" of both voir dire inquiries, which led the State to believe she was not paying attention during the inquiry and might have difficulty paying attention to the evidence presented at trial. Thus, the other juror was not similarly situated, and Whalen failed to meet his burden to show the State's reasons were merely pretextual. *See Miller*, 162 S.W.3d at 16.

As in *Miller*, here the court found the State' s explanation credible in light of the totality of the facts and circumstances and denied Whalen's challenge. *Id*. at 17. We cannot conclude

6

the trial court plainly erred in denying Whalen's *Batson* objection to the State's decision to strike Juror No. 135. Point two on appeal is denied.

## Point IV – Detective's Testimony

In his fourth and final point on appeal, Whalen argues the trial court plainly erred in allowing the state to repeatedly elicit testimony from Detective regarding the credibility of witnesses he interviewed during his investigation. Whalen contends although he did not object to the testimony, the court plainly erred in failing to *sua sponte* strike the testimony because it invaded the province of the jury.

### *Analysis*

Generally, if a witness testifies as to the credibility of another witness it impermissibly invades the province of the jury. *State v. Benn*, 341 S.W.3d 203, 211-12 (Mo. App. W.D. 2011) (internal citation omitted). However, testimony regarding credibility that is not related to trial testimony, nor overall credibility, has been allowed. *Id*. It is also permissible for an officer to testify regarding his or her observation of a fact based on his or her experience as an investigator. *State v. Loper*, 609 S.W.3d 725, 733-34 (Mo. banc 2020) (quoting *State v. Galvin*, 483 S.W.3d 462, 467 (Mo. App. E.D. 2016)). In addition, a defendant cannot complain about the admission of testimony first elicited by his own counsel on cross-examination. *State v. Middleton*, 854 S.W.2d 504, 516 (Mo. App. W.D. 1993) (citing *State v. Hicks*, 716 S.W.2d 387, 389 (Mo. App. E.D. 1986)).

During cross-examination, counsel for Whalen asked Detective the following concerning his initial investigation into the shooting:

Q      So all that you have been made aware of is that [witnesses] say that [Whalen] shot [Victim]?

A      That's correct.

Q And it was your job to judge their credibility, correct?

A It was.

Q And you did judge their credibility, correct?

A I did.

Q And you found that you didn't need to do any further investigation into a murder case?

A They stuck around the scene and produced themselves as cooperative witnesses right away.

Q That didn't answer my question.

A Can you ask it again?

Q Sorry. You believe they were credible enough to charge somebody with murder?

A I did.

Q Those two witnesses?

A I do.

The complained-of testimony at issue was not elicited until Whalen's cross-examination, in an apparent attempt to suggest Detective's investigation was not thorough and essentially one-sided. The prosecutor merely asked similar questions on redirect in an effort to rehabilitate Detective's testimony regarding the witness interviews at the scene and his assessment of their credibility in their account of the incident. Only one of the witnesses testified at trial, and Detective made no statement regarding her trial testimony or overall credibility.

As a result, the trial court did not err, plainly or otherwise, in refusing to *sua sponte* strike Detective's testimony regarding his assessment of the credibility of witnesses he interviewed. Point four is denied.

8

**Point III – Closing Argument**

In his third point on appeal, Whalen claims the trial court erred in overruling his objection to the prosecutor's misstatement of law regarding self-defense during closing argument. According to Whalen, the jury was improperly permitted to rely on the misstatement as to whether he had a duty to retreat, resulting in the jury's rejection of his claim of self-defense.

*Standard of Review*

The trial court has broad discretion in determining the scope of closing argument. *State v. Oates*, 12 S.W.3d 307, 312 (Mo. banc 2000). We will not reverse the trial court's ruling concerning closing argument absent a showing of an abuse of that discretion. *Id*. Moreover, to constitute reversible error there must be both an abuse of discretion and prejudice to the defendant as a result. *State v. Hashman*, 197 S.W.3d 119, 134 (Mo. App. W.D. 2006) (internal citation omitted). "To warrant reversal of a conviction for improper closing argument, the defendant must establish that counsel's improper comments had a decisive impact upon the jury's verdict." *State v Meder*, 870 S.W.2d 824, 831 (Mo. App. W.D. 1993). The trial court is in the best position to determine the effect of closing argument on the jury in light of the overall circumstances, and on appeal we consider the entire record to determine whether the error was sufficiently prejudicial. *Hashman*, 197 S.W.3d at 134.

*Analysis*

Although counsel is permitted relatively wide latitude during closing argument, misstatements of the law are impermissible. *Id.* at 133. However, a jury is presumed to know and have followed the instructions given by the trial court, and even if counsel misstates the law, it is harmless error if the court properly instructs the jury on that law. *Id*. at 134, 135.

Here, during closing argument the prosecutor stated: "At that point he could have left. Of course there's no legal duty, the defense says there's no legal duty to retreat. No, that's not an issue in this case." At that point, counsel for Whalen objected to the misstatement of law and the court overruled the objection. The prosecutor continued her argument, stating, "There is a duty to withdraw if you want to use self-defense." Counsel for Whalen again objected to the misstatement of law, and the court overruled the second objection. The prosecutor continued with closing argument as follows:

> And so at that point, well, excuse me, he is correct, that is a misstatement. You don't have to withdraw in order to use first defense. If you are the initial aggressor, you do have a duty to withdraw in order to defense [sic] yourself again, you have to regain your status and not the initial aggressor.
>
> And at that point, sure, he could have chosen to leave, but no, he's about chaos. So he stayed for the chaos. And if [Victim] had such a reputation for violence, why wouldn't he leave.

Pursuant to Section 563.031.1(1) RSMo (2016)[2], a person may use physical force upon another in defense of himself from the "imminent use of unlawful force by such other person" if the individual is not the initial aggressor. However, if the individual is the initial aggressor, he may avail himself of the defense if he has withdrawn from the encounter and the other individual "persists in continuing the incident by the use or threatened use of unlawful force." Section 563.031.1(1)(a). The jury was given Instruction No. 8, which set out the law of self-defense consistent with the language in the statute. Importantly, Instruction No. 8 specifically informed the jury that an individual "is not required to retreat before resorting to the use of physical force to defend himself if he is lawfully remaining in a location the person has a right to be."

While it appears as though the prosecutor may have initially misstated the law when saying, "[t]here is a duty to withdraw if you want to use self-defense," she thereafter corrected

---

[2] All further statutory references are to RSMo (2016).

10

herself and explained to the jury, "[y]ou don't have to withdraw in order to use first [sic] defense." She further elaborated on the concept, noting there is a duty to withdraw if an individual is the initial aggressor in order to use self-defense. This was not a misstatement of the law. Moreover, because the jury was properly instructed on the law regarding self-defense and we presume they follow the instructions given by the court, any potential misstatement was harmless error. *See Hashman*, 197 S.W.3d at 134, 135.

As a result, the trial court did not abuse its discretion in overruling Whalen's objection to the prosecutor's closing argument. Point three on appeal is denied.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
Lisa P. Page, Presiding Judge

Kurt S. Odenwald, J., and
Rebeca Navarro-McKelvey, J., concur.

11