**STATE of Missouri, Respondent,**

v.

**Donny CHILTON, Appellant.**

**No. ED 82127.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 14, 2003.

Kristina Starke, St. Louis, MO, for appellant.

John M. Morris, Adriane Crouse (co-counsel), Charnette Douglass (co-counsel), Jefferson City, MO, for respondent.

## *OPINION*

GLENN A. NORTON, Presiding Judge.

Donny Chilton appeals the judgment entered on his convictions for first degree burglary and misdemeanor stealing. We affirm.

## I. BACKGROUND

Early one morning, a St. Louis Cardinals' employee working in the press box at Busch Stadium saw three people coming up through the lower level seats, just behind home plate, onto the concourse. He left the press box and went toward where he thought they were going. He saw them leave the stadium by jumping over the railing down to the sidewalk and noticed that one of them was carrying golf clubs and another was carrying a batting helmet. He pursued them as they walked toward a hotel parking garage. When he caught up with them in the well-lit garage, he took the clubs and helmet, but was not able to detain them. He was right next to them and saw their faces for five to ten seconds.

When Busch Stadium personnel viewed a surveillance video, they saw three individuals in the tunnel area alongside the Cardinals' locker room and thought that one of them resembled Chilton, a Fred Bird mascot at the stadium. The police made still photos of the surveillance tape and went to Chilton's last known address. The building was vacant, so the police went next door to Chilton's neighbor, who identified Chilton in two of the photos. The police also showed the photos to Chilton's ex-girlfriend, who identified Chilton in the same two photos. Chilton was arrested and placed in a live lineup. The Cardinals' employee identified Chilton as one of the individuals he had seen the morning of the burglary. He also identified Chilton during trial.

The jury found Chilton guilty of first degree burglary and misdemeanor stealing. Chilton appeals.

## II. DISCUSSION

Chilton claims that the trial court erred in refusing to suppress the identifications because they resulted from impermissibly suggestive police procedures that created a substantial risk of misidentification and were unreliable. We disagree.

Although before trial Chilton moved to suppress all the identifications, at trial he only objected to the admission of the neighbor's identification, and thus only that alleged error is preserved for appeal. *See State v. Huchting,* 927 S.W.2d 411, 415 (Mo.App. E.D.1996). On review of this error, we will not disturb the trial court's decision to admit or exclude evidence un-

less there has been an abuse of discretion. *State v. Chaney,* 967 S.W.2d 47, 55 (Mo. banc 1998). We defer to the trial court's superior opportunity to judge the credibility of the witnesses at the motion hearing. *State v. Williamson,* 836 S.W.2d 490, 496 (Mo.App. E.D.1992). The facts are viewed in the light most favorable to the trial court's ruling, and any contrary evidence and inferences therefrom are disregarded. *State v. Winston,* 959 S.W.2d 874, 878 (Mo. App. E.D.1997). As to the unpreserved claims of error relating to the admission of the ex-girlfriend's and the employee's identifications, we only review for plain error. Chilton must demonstrate that the trial court's action was not only erroneous, but that the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if it is left uncorrected. *See State v. Hornbuckle,* 769 S.W.2d 89, 92–93 (Mo. banc 1989).

 The trial court did not err, plainly or otherwise, in admitting the identifications of Chilton. The test for admission of identification testimony is two-pronged: (1) was the pre-trial identification procedure impermissibly suggestive, and (2) if so, what impact did the suggestive procedure have upon the reliability of the identification made by the witness. *Id.* at 93. Reliability is "the 'linchpin' in determining the admissibility of identification testimony." *Id.* (quoting *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). Reliability is assessed under the totality of the circumstances, including the following factors: (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Hornbuckle,* 769 S.W.2d at 93.

## A. Photograph Identifications

 The neighbor and ex-girlfriend were asked if Chilton was pictured in the photographs taken from the surveillance camera. Chilton claims that asking the question in this manner impermissibly suggested that Chilton was indeed in the photographs. An identification is not impermissibly suggestive simply because the police tell a witness that the photograph array contains a picture of the suspect. *State v. Jones,* 917 S.W.2d 622, 624 (Mo. App. E.D.1996). The officer's question did not prompt the neighbor or ex-girlfriend to make an identification, nor did it single out any of the suspects in the photo. *See State v. Simms,* 810 S.W.2d 577, 582 (Mo. App. E.D.1991) (procedure was not impermissibly suggestive when detective told witness that he believed suspect was contained in photo array, but did not single out any of the photos); *see also State v. Overstreet,* 694 S.W.2d 491, 495 (Mo.App. E.D.1985) (procedure was not impermissibly suggestive when police did not encourage or prompt witness to identify defendant at time of arrest).

 Moreover, the neighbor's and the ex-girlfriend's identifications were reliable. Although the factors used to determine reliability are not readily applicable to these identifications because they did not witness the burglary, an opinion concerning the identity of a person depicted in a surveillance photograph is admissible " 'if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.' " *State v. Gardner,* 955 S.W.2d 819, 824 (Mo.App. E.D.1997) (quoting *United States v. Farnsworth,* 729 F.2d 1158, 1159 (8th Cir.1984)); *see also Winston,* 959 S.W.2d. at 877–78 (lay witness familiar with defendant may testify whether defendant is person in surveillance video). Here, the neighbor's and the ex-

girlfriend's identifications of Chilton were admissible because they were familiar with Chilton and would be more likely to correctly identify Chilton than would the jury.

## B. Lineup Identification

██ Chilton claims. that the employee's lineup identification was impermissibly suggestive because the police did not "assemble a lineup of four persons who resembled any of the burglars." Dissimilarity in physical appearance alone is insufficient to establish that a lineup was impermissibly suggestive. *State v. Cooks,* 861 S.W.2d 769, 772 (Mo.App. E.D.1993). Chilton does not assert any other basis for finding that this lineup was suggestive.

Moreover, his identification was reliable. The employee was standing right next to the individuals in a well-lit parking garage and had between five to ten seconds to view them. The employee did not give a description of the individuals to the police, and the time between the crime and the live lineup was almost a year. Regardless, he was 90 percent certain of his identification at the lineup. Also, he testified that he immediately recognized Chilton and even noticed that Chilton had different facial hair than he had on the morning of the burglary. This indicates that the employee was paying close attention. *See Hornbuckle,* 769 S.W.2d at 93.

The trial court did not abuse its discretion by admitting the identifications of Chilton, and there has been no plain error.

Point denied.

## III. CONCLUSION

The judgment is affirmed.

KATHIANNE KNAUP CRANE, J. and MARY K. HOFF, J. concurring.