**STATE of Missouri, Plaintiff–Respondent,**

v.

**Ricky D. JACKSON, Defendant–Appellant.**

**No. SD 31350.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 28, 2012.

Rosalynn Koch, for Appellant.

Chris Koster, Daniel N. McPherson, for Respondent.

NANCY STEFFEN RAHMEYER, J.

Ricky D. Jackson ("Appellant") was charged with two counts of forgery in violation of section 570.090.[1] The case was tried to a jury on October 26, 2010, and the jury returned a verdict of guilty on each count. On November 29, 2010, the trial court sentenced Appellant to five years in the Department of Corrections on each count with the sentences to run consecutively. Appellant appeals the trial court's judgment and raises four points. In his first two points, Appellant challenges the sufficiency of the evidence to support the jury's guilty verdicts. In his third point, Appellant claims the trial court plainly erred by abandoning its duty of neutrality. And, in his fourth point, Appellant complains that the trial court plainly erred by improperly excluding a witness. We disagree, and affirm the trial court's judgment.

**Facts and Procedural History**

On February 9, 2009, Appellant was charged by information with two counts of forgery "acting alone or in association with another" in violation of section 570.090. Each forgery was a class C felony. The information alleged the forgeries occurred on October 11, 2005, in Scott County. The information was amended on the morning of trial to add an allegation that Appellant was a prior offender.

Appellant represented himself at pretrial proceedings after his last retained attorney was granted permission to withdraw on June 7, 2010, and at trial. The trial court did not appoint an attorney to represent Appellant because Appellant was not indigent.

At a pretrial hearing, the trial court warned Appellant, "[n]ow, I'm going to tell you ahead of time, I'm not going to stand for these outbursts and these protestations in front of the jury. You're going to follow the rules of evidence and the rules of law, just as [the prosecutor] is going to follow the same rules of evidence and the same rules of law.... And if these outbursts get too bad, I will gag you, okay?" The trial court granted the State's motion in limine to prevent Ronald Houtenpaugh from appearing as a witness at trial.

A jury trial commenced on October 26, 2010. On the morning of trial before jury selection began, Appellant engaged in a lengthy discussion with the trial court. This discussion led the trial court to state, "[w]e're not going to go through this all day, and you're going to poison your jury, and you're going to hang yourself. I'm giving you fair warning," and a short time later, "I'm not going to do this all day. If I have to hold you in contempt of Court and throw you [in] jail, I will."

The evidence introduced at trial showed the following. In 2004, the Peoples Bank of Altenburg foreclosed on a commercial building owned by Appellant and used as an auto repair shop.[2] The building was

---

1. All references to statutes are to RSMo, Cum. Supp.2002, unless otherwise specified.

2. The bank actually foreclosed on the building twice. After the first foreclosure, the bank

located in Scott County. After the foreclosure, Appellant began sending the bank "some kind of legal documents" that the bank's President and CEO Matthew Puchbauer had not seen before. Mr. Puchbauer did not consent to any lien on any of his property in favor of Appellant, and has never borrowed any money from Appellant. Mr. Puchbauer did not respond to Appellant's documents, and did not agree to the documents. The bank owns property in Scott County, and a recorded lien against the bank would cloud the bank's title to the property and require the lien to be "settled" before the property could be sold. The bank would have to hire an attorney to resolve the lien. Doug Johnson handled the bank's loan to Appellant until the bank began the foreclosure.

Steven W. Holden, who was involved in "real estate work" and was a former real estate attorney and owner of a title insurance company and a member of a bank board of directors, testified as follows. A lien can only be created by a voluntary act or through registering a judgment of a court. A lien filed with the county recorder places a cloud on the title of property in the county, and would require the owner of the property to satisfy the lien or take legal steps to remove the lien or indemnify a title insurance company. Not responding does not create a contract in Missouri.

State's Exhibit 1 was admitted into evidence without objection. The second and third pages of that document purport to be a Uniform Commercial Code Acknowledgment of Initial Financing Statement ("UCC Acknowledgment"). The UCC Acknowledgment showed Appellant as the Secured Party and Appellant, Peoples Bank of Altenburg, Doug Johnson, Matt Puchbauer, Equifax, Experian, and Trans-union as Debtors. The UCC Acknowledgment was not signed by any person identified as a Debtor or by Appellant. In an area labeled "Collateral," the UCC Acknowledgment stated:

> The Debtors have consented to this Admiralty Maritime lien filing in the International Commercial Claim Within the Admiralty Administrative Remedy Judgment by Estoppel Agreement/Contract File # RDJ01022005, Registered # PR 799 080 690 US, perfected on May 2, 2005 in the accounting and True Bill amount of $52,496,006.16. All personal and real property; bank accounts, foreign and domestic; private exemptions; government risk management accounts; insurance policies; stocks and bonds; asset accounts; investments and future earnings of the Debtors is now the property of the Secured Party.

The UCC Acknowledgment showed a "File Date/Time" of "10/11/2005 12:49AM."

State's Exhibit 2 was admitted into evidence over Appellant's objection. The first page of the exhibit contains the phrases "Petition for Agreement and Harmony within the admiralty in the Nature of a **NOTICE OF INTERNATIONAL COMMERCIAL CLAIM IN ADMIRALTY ADMINSTRATIVE REMEDY**," "FILE # RDJ01022005," and "Date: January 2, 2005." Appellant appears to have signed the exhibit on pages 6 and 11. In an area labeled *"ACCOUNTING AND TRUE BILL"* on page 10 of the exhibit, the following items are listed: "Compensatory Damages" in the amount of $261,174.16 ($65,293.54 "Sum Certain of Actual Cost Funds" multiplied by a "Rights Violations Compensation Multiplier" of 4), "Punitive Damages" in the

---

discovered that an easement failed to reach a highway that ran near the building. The bank sold the building back to Appellant and obtained an easement that reached the high-way. When Appellant again failed to pay the note secured by the building, the bank foreclosed on the building a second time.

amount of $52,234,832.00 ($261,174.16 "Sum Certain of Actual Cost Funds" multiplied by a "Punitive Compensation Multiplier" of 200), and "Total Damages for Conversion" in the amount of $52,496,006.16. There is no indication that these damages were imposed by the judgment of a court.

Appellant's sister-in-law, Sheila Camden, and Appellant's son attempted to file the UCC Acknowledgment with the Scott County Recorder of Deeds on October 11, 2005. The Recorder refused to file the document. Ms. Camden testified that she handed the UCC Acknowledgment to Appellant's son when they arrived outside of the Recorder's office, Ms. Camden and Appellant's son then went upstairs, and Appellant's son handed the UCC Acknowledgment to the clerk. After the Recorder refused to file the UCC Acknowledgment, Appellant "typed" a written statement for Ms. Camden's signature that is the first page of State's Exhibit 1. At Appellant's request, Ms. Camden signed that page and then mailed State's Exhibit 1 to the Recorder of Deeds. Ms. Camden did not have "any actual personal knowledge" about the UCC Acknowledgment. Ms. Camden frequently notarized documents for Appellant in 2004 and 2005 that Appellant printed from his computer. Ms. Camden also mailed documents for Appellant. Ms. Camden notarized several documents for Appellant, including State's Exhibit 2, that were related to the UCC Acknowledgment. Appellant printed State's Exhibit 2 from his computer in front of Ms. Camden.

The Recorder of Deeds testified that Ms. Camden told the Recorder, "[Appellant] wanted [the UCC Acknowledgment] on record." Appellant called the Recorder, and told the Recorder "just record the damn thing." The Recorder again refused to record the UCC Acknowledgment. The Recorder "was guessing that it was a . . . fraudulent document. I mean, it's talking about $52 million, and I haven't got many $52 million financing statements." The form also "looked a little suspicious" to the Recorder, and did not appear to be authorized by statute. The Recorder testified that a recorded lien can impair an owner's ability to sell property or borrow against the property.

On at least three occasions during the trial, Appellant's conduct before the jury caused the trial court to admonish Appellant. At one point, the following exchange occurred between Appellant, a witness, the prosecutor, and the trial court:

Q [Appellant]. So you're not familiar with the supplemental rules of admiralty maritime, but yet you're testifying here today that I did a forged contract?

A [Witness]. Are you familiar with those laws?

Q [Appellant]. Well, pretty well, sir, yes. I studied them before I did this. I mean, I think I've pretty proved that with all the documentation over here that the Court will not let me present.

[Prosecutor]: Objection, Your Honor. That's improper.

THE COURT: That comment is going to cost you some money if you're not careful, [Appellant]. I'm tired of your contentious actions and remarks to this Court. I'm admonishing and I'm warning you. I'm going to sustain this—

[Appellant]: With all due respect, sir, all I'm trying to do is defend myself— with all due respect.

THE COURT: And the Court is giving you all opportunity. The Court has been very lenient with you, and you're about to reach the breaking point and a bit more. Ask your next question that's relevant to this case.

Appellant called a witness who was excluded because he had been present in the courtroom during the trial in violation of

the trial court's earlier order that witnesses should remain outside the courtroom until called to testify. Appellant called no other witnesses.

## Discussion

### Points I and II—Sufficiency of the Evidence to Support the Jury's Guilty Verdicts

In his first two points, Appellant challenges the sufficiency of the evidence to support the jury's guilty verdicts. In his first point, Appellant specifically claims the "trial court plainly erred" with respect to both Counts I and II in that "there was no evidence that appellant either created or transferred the lien with the purpose to defraud and knowing that it had been made by authority of one who did not give such authority[.]" In his second point, Appellant specifically claims "the trial court plainly erred" with respect to Count II in that "there was no evidence that appellant transferred any writing[.]"

### Standard of Review

■ Our Supreme Court has described our standard of review as follows:

In reviewing the sufficiency of evidence, this Court limits its determination to whether a reasonable juror could have found guilt beyond a reasonable doubt. *State v. Belton,* 153 S.W.3d 307, 309 (Mo. banc 2005). In so doing, the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict. *Id.* As such, this Court will not weigh the evidence anew since "the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002).

*State v. Freeman,* 269 S.W.3d 422, 425 (Mo. banc 2008).

■ In addition, "'[c]ircumstantial and direct evidence are afforded the same weight. So long as the evidence meets the minimal appellate standard for due process, we need not disturb the verdicts simply because they depended wholly upon circumstantial proof.'" *State v. Jennings,* 322 S.W.3d 598, 600 (Mo.App. S.D.2010) (quoting *State v. Capraro,* 291 S.W.3d 364, 366 (Mo.App. S.D.2009)).

### Analysis

■ For the jury to find Appellant guilty of a violation of section 570.090.1(1), the jury was required to find beyond a reasonable doubt that Appellant made a writing "so that it purport[ed] to have been made ... by authority of one who did not give such authority," and did so "with the purpose to defraud[.]" To find Appellant guilty of a violation of section 570.090.1(4), the jury was required to find beyond a reasonable doubt that Appellant "transfer[red] with the knowledge or belief that it will be used as genuine, any writing ... which the actor knows has been made or altered," and did so "with the purpose to defraud[.]"

The evidence from which a reasonable juror could have found Appellant guilty of making a writing that purported to have been made by one who did not give authority is contained in Exhibit 1, the UCC Acknowledgment. It represented that the "Debtors have consented to this Admiralty Maritime lien filing" in an international commercial claim, and listed Peoples Bank of Altenburg and Mr. Puchbauer, the bank's President and CEO, as Debtors among others. This evidence shows the UCC Acknowledgment purported to have been made by the authority of Peoples Bank of Altenburg and Mr. Puchbauer.

In addition, Mr. Puchbauer testified to the following facts. After the bank foreclosed on Appellant's commercial building, Appellant began sending the bank unusual legal documents. Mr. Puchbauer did not respond or agree to these documents. Further, Mr. Puchbauer did not consent to a lien on his property in favor of Appellant, and never borrowed any money from Appellant. This evidence is sufficient to permit a reasonable juror to infer beyond a reasonable doubt that neither the bank nor Mr. Puchbauer gave authority for the UCC Acknowledgment.

Finally, the UCC Acknowledgment represented that the lien consented to was "in the accounting and True Bill amount of $52,496,006.16," and that "[a]ll personal and real property . . . and future earnings of the Debtors is now the property of" Appellant. A second exhibit, which appeared to have been signed in two places by Appellant, described an accounting and true bill for "Total Damages for Conversion" in the amount of $52,496,006.16. The accounting does not indicate the damages were imposed by the judgment of a court, includes the phrases "Sum Certain of Actual Cost Funds," "Rights Violations Compensation Multiplier," and "Punitive Compensation Multiplier," and appears frivolous on its face. Further, multiple witnesses testified that a recorded lien impairs the ability of the owner of property subject to the lien to dispose of, or borrow against, the property until the lien is resolved. This evidence, in combination with the bank's recent foreclosure on Appellant's commercial building, is sufficient to permit a reasonable juror to infer beyond a reasonable doubt that Appellant made the writing with the "purpose to defraud" the bank and Mr. Puchbauer.

Additionally, the evidence was sufficient to permit a reasonable juror to find that Appellant violated section 570.090.1(4) by transferring Exhibit 1. The only additional elements under Count II of the Amended Information were that Appellant "transferred" Exhibit 1 with the knowledge or belief that it would be used as genuine, and "knew" the UCC Acknowledgment had been made so that it purported to have been made by authority of one who did not give such authority.

"[T]ransfer" as used in section 570.090.1(4) has its common sense, dictionary meaning. *State v. Stallings*, 158 S.W.3d 310, 313–14 (Mo.App. W.D.2005). The dictionary meaning includes "to pass or hand from one to another," "to convey . . . from one place or one person to another," and to "transmit." *Id.* The evidence that (1) the Peoples Bank of Altenburg recently had foreclosed on Appellant's commercial building, (2) the UCC Acknowledgment purported to impose a lien in favor of Appellant against the Peoples Bank of Altenburg and Mr. Puchbauer, a senior bank officer, (3) Appellant had access to a computer and regularly printed out documents for Ms. Camden to notarize and mail, (4) Ms. Camden did not understand the substantive content of the UCC Acknowledgment and returned to Appellant when the Recorder refused to record the UCC Acknowledgment, and (5) Appellant called the Recorder and told him to record the UCC Acknowledgment and that Ms. Camden told the Recorder Appellant wanted the UCC Acknowledgement on record, was sufficient to permit a reasonable juror to infer beyond a reasonable doubt that Appellant transferred the UCC Acknowledgment to Ms. Camden or Appellant's son on or about October 11, 2005, for the purpose of the UCC Acknowledgment being presented to the Recorder for recording.

Ms. Camden's testimony that, on returning to Appellant after the Recorder refused to record the UCC Acknowledgement, Appellant prepared a statement for

Ms. Camden to sign and then requested that she mail the statement and UCC Acknowledgment to the Recorder for recording was sufficient to permit a reasonable juror to infer beyond a reasonable doubt that Appellant transferred the UCC Acknowledgment to Ms. Camden a second time on or about October 11, 2005, for mailing to the Recorder. In the case of both transfers, the evidence was sufficient to permit a rational jury to find beyond a reasonable doubt that Appellant did so with the knowledge and belief the UCC Acknowledgement would be used as genuine by presenting it to the Recorder for recording.

In addition, if believed by the jury, the evidence of the bank's recent foreclosure on Appellant's commercial building combined with Mr. Puchbauer's testimony that he did not respond or agree to the legal documents Appellant sent the bank and did not consent to a lien on his property or borrow money from Appellant was adequate to permit a rational jury to infer beyond a reasonable doubt that Appellant "knew" the UCC Acknowledgment had been made so that it purported to have been made by authority of one who did not give such authority.

Appellant's first and second points are denied.

### Point III—The Trial Court's Duty of Neutrality

■ In his third point, Appellant claims that the trial court "plainly erred . . . by abandoning its duty of neutrality . . . by telling [Appellant] in front of the jury that his comment 'is going to cost you some money if you're not careful,' and 'I'm tired of your contentious actions and remarks to this Court,' and 'you're about to reach the breaking point and a bit more[ ]' . . . in that the trial court's action was abusive toward appellant, indicating that his decision to represent himself was causing

problems for the court; that his questioning was irrelevant and improper; that he tried the patience of the court[;] all of which prejudiced appellant and denied him a fair trial." Appellant acknowledges that he did not preserve his third point for appellate review, and that his third point is entitled to review only for plain error.

■ Missouri Court Rule 30.20 (2012) provides in part that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Plain errors are evident, obvious, and clear, and a reviewing court determines whether such errors exist based on the facts and circumstances of each case. *State v. Royer,* 322 S.W.3d 603, 606 (Mo. App. S.D.2010). The appellant has the burden to establish the trial court committed an evident, obvious and clear error, and that there has been a manifest injustice or a miscarriage of justice. *Id.* In conducting plain error review, we first determine whether the trial court committed an evident, obvious and clear error that affected Appellant's substantial rights. *State v. Russell,* 336 S.W.3d 504, 506 (Mo. App. S.D.2011). Only if an error of this nature is identified do we then determine if the error resulted in manifest injustice or a miscarriage of justice. *Id.*

### Analysis

■ "Pro se parties are bound by the same rules of procedure as parties represented by lawyers, and are not entitled to indulgences they would not have received if represented by counsel." *Belisle v. City of Senath,* 974 S.W.2d 600, 601 (Mo.App. S.D.1998). This Court acknowledges the problems faced by pro se litigants; however, we cannot relax our standards for non-lawyers. *Hardin v. State,* 51 S.W.3d 129, 131 (Mo.App. W.D.2001).

A trial judge is to maintain absolute impartiality during proceedings to ensure that the defendant receives a fair trial. Accordingly, the court must maintain a position of neutrality and should avoid any conduct which might be construed as indicating a belief on the part of the judge as to the defendant's guilt. The issue is whether the remarks by the trial judge could have prejudiced the minds of the jury against the defendant. Whether there was prejudice depends on the context and words in each case. There is no error as long as the trial judge does not express an opinion as to the nature, content, or truthfulness of evidence.

*State v. Webber*, 982 S.W.2d 317, 321 (Mo. App. S.D.1998). If it does not result in undue prejudice, the trial court may, even in the presence of the jury, punish a person for contempt. *State v. Nevills*, 530 S.W.2d 52, 54 (Mo.App. St.L.D.1975). We find no error, plain or otherwise, in the conduct of the trial judge. Each comment was in response to inappropriate behavior by Appellant in the presence of the jury.

As Appellant concedes in his brief, the trial court's statements could not be construed as indicating a belief in Appellant's guilt. The trial court's statements also did not express an opinion as to the nature, content, or truthfulness of the evidence, and did not indicate to the jury that it should abdicate its duty to determine the facts. Appellant's third point is denied.

### Point IV—Exclusion of Defense Witness Ronald Houtenpaugh

 In his fourth point, Appellant asserts that the trial court "plainly erred" in excluding Ronald Houtenpaugh as a witness because Houtenpaugh's testimony about using "an admiralty negative deferment ... was accepted in federal court in Colorado" was "material, relevant and important to the defense that appellant did not intend to defraud" the Peoples Bank of Altenburg "but believed that he was entitled to a lien." We disagree.

 As with his third point, Appellant acknowledges that he did not preserve his fourth point for appellate review, and that his fourth point is entitled to review only for plain error. In the case of preserved error, we review a trial court's decision to exclude evidence for abuse of discretion and resulting prejudice. *State v. Wolfe*, 344 S.W.3d 822, 837 (Mo.App. S.D.2011); *State v. Mason*, 95 S.W.3d 206, 211 (Mo.App. S.D.2003); *State v. Barriner*, 111 S.W.3d 396, 401 n. 4 (Mo. banc 2003). "A trial court abuses its discretion in excluding evidence if its decision shocks the sense of justice or indicates an absence of careful consideration." *Wolfe*, 344 S.W.3d at 837.

At the pretrial conference eight days before trial, Appellant's only description of Ronald Houtenpaugh's expected testimony was that "Mr. Houtenpaugh was here to testify to the fact that an admiralty negative deferment under maritime and everything was accepted into the federal district court in the State of Colorado as good. That would have been the testimony of Mr. Houtenpaugh." On the basis of that description, the trial court sustained the State's motion in limine to exclude Houtenpaugh's testimony. In the absence of proffered facts that showed the relevance of Houtenpaugh's testimony to the issues in this case, the trial court did not abuse its discretion in sustaining the State's motion in limine.

 Appellant did not call Houtenpaugh as a witness at trial, and did not make any further offers of proof as to the content of Houtenpaugh's expected testimony. A trial court's ruling on a motion in limine is interlocutory and generally will not support appellate review; and the party offering excluded evidence must demonstrate its relevancy and materiality

through an offer of proof. *State v. Bisher*, 255 S.W.3d 29, 33–35, 34 n. 2, 37 (Mo.App. S.D.2008). Appellant has not preserved any claim of error in the exclusion of Houtenpaugh as a witness. Appellant's fourth point is denied.

The trial court's judgment is affirmed.

GARY W. LYNCH, P.J. and WILLIAM W. FRANCIS, JR., J., Concur.