**STATE of Missouri, Respondent,**

v.

**Maurice Anthony THOMAS, Defendant/Appellant.**

**No. ED 98905.**

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 3, 2013.

Amanda Faerber, Missouri Public Defender Office, St. Louis, MO, for appellant.

Chris Koster, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for respondent.

## OPINION

MARY K. HOFF, Presiding Judge.

Maurice Anthony Thomas (Defendant) appeals from the judgment upon his conviction by a jury for one count of first-degree robbery, in violation of Section 569.020, RSMo 2000,[1] and one count of armed criminal action, in violation of Section 571.015, for which he was sentenced as a prior offender to concurrent terms of twelve-years' imprisonment. We affirm.

### Factual and Procedural Background

Defendant does not contest the sufficiency of the evidence to support his conviction. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial: One evening in August 2010, Victim was taking out the garbage at his home in the City of St. Louis. To get to the dumpster, Victim had to go through his backyard, which was surrounded by a high wooden privacy fence, and enter into an alley. Victim did not see anyone on his way to the dumpster.

As he was returning to his house, Victim saw Defendant and his stepbrother walk out from a neighboring property. Defendant was walking toward Victim and holding a gun. Defendant told Victim to get on his knees. Victim obeyed and, as he was getting down, Victim was looking at Defendant. Defendant then approached Victim from behind and placed the gun against his neck. Defendant asked Victim

1. Unless otherwise indicated, all further statu- tory references are to RSMo 2000.

what he had, and Victim replied, "I have my wallet." Defendant's stepbrother searched Victim's pockets and pulled out his wallet. After rifling through Victim's wallet for cash, Defendant asked Victim if he had an ATM card. Victim replied that he did.

At about that time, Victim's roommate was coming outside to smoke a cigarette. Victim's dog also came out and began barking. Defendant and his stepbrother took Victim's shoes and ran down the alley. Victim waited a few seconds before getting up. As he stood up, he looked down the alleyway and saw Defendant and his companion running. Victim then told his roommate that he had been robbed. The roommate called 911. Defendant's stepbrother was arrested after being found hiding in a garage. He was brought back to Victim's house for a show-up lineup and Victim identified him as the man who rifled through his pockets. Defendant's stepbrother admitted he was involved in the robbery and told police that Defendant was the other man involved in the incident. Defendant's stepbrother later gave a taped statement to that effect.

Based on Defendant's brother's statement, police prepared a photo spread consisting of six photos, including Defendant's. The photo spread was initially shown to Defendant's stepbrother, who identified Defendant. That identification prompted police to put out a "wanted" on Defendant.

Another photo spread was created that included Defendant's photo, and detectives went to Victim's home so he could view the photo spread. Victim was immediately able to rule out three of the persons depicted. He testified he thought one of the persons depicted might be the gunman, but was not positive, and indicated he did not want to make an identification unless he was "completely sure." Victim stated to police that he wanted to see the gunman in person.

Two days after the robbery, Defendant was arrested in St. Louis County. The next day, Victim viewed a physical lineup, which consisted of Defendant and three other men. Victim testified that he immediately recognized Defendant as the gunman and that he had a physical reaction to seeing him because it brought back memories of the robbery. A detective present during the line-up testified that Victim immediately began breathing heavily and immediately identified Defendant as the gunman. Victim was asked if he wanted Defendant to speak and replied, "No, there's no need. I know that's the gunman."

Defendant did not testify at trial but he did present alibi testimony from his mother and sister that he had been with them at the time of the robbery. Following the close of all evidence and arguments, the jury found Defendant guilty as charged. The trial court sentenced Defendant as a prior offender to concurrent terms of twelve-years' imprisonment on each count. This appeal follows. Additional facts are provided as needed in the discussion section below.

*Out–of–Court Identifications*

In his first point, Defendant argues that the trial court erred in overruling his motion to suppress Victim's identification of Defendant because the identification procedures were impermissibly suggestive. We disagree.

 Our review of the admission of evidence following a ruling on a motion to suppress is limited to determining whether the evidence is sufficient to support the trial court's ruling. *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003). We consider the record made at the suppres-

sion hearing as well as the evidence introduced at trial. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999). We consider only the facts and reasonable inferences derived therefrom that are favorable to the trial court's ruling. *State v. Galazin*, 58 S.W.3d 500, 507 (Mo. banc 2001). The trial court's ruling on a motion to suppress will be affirmed unless the ruling was clearly erroneous. *State v. Williams*, 277 S.W.3d 848, 851 (Mo.App. E.D.2009).

 The test for the admission of identification testimony is two-pronged. *State v. Chilton*, 119 S.W.3d 176, 178 (Mo. App. E.D.2003). The first prong asks whether the pre-trial identification procedure was impermissibly suggestive. *Id.* If the answer to that question is yes, then the second prong assesses the impact that the suggestive procedure had upon the reliability of the identification made by the witness. *Id.* Reliability is the linchpin in determining the admissibility of identification testimony. *Id.* But a defendant must clear the suggestiveness hurdle before procuring a reliability review. *State v. Vinson*, 800 S.W.2d 444, 446 (Mo. banc 1990).

Here, Defendant filed a motion to suppress testimony regarding out-of-court identifications made by Victim. The trial court held a hearing on the motion. St. Louis Police Detective Robert Skaggs (Detective Skaggs) and Detective Justin Johnson (Detective Johnson) were assigned to investigate the robbery. Detective Johnson questioned Defendant's stepbrother after he was arrested, and he identified Defendant as his accomplice in the robbery. Detective Johnson asked Detective Skaggs to locate a photo of Defendant and place it in a photo line-up. Using a computer program that randomly generated a number of photographs, Detective Skaggs selected five to place in the line-up with Defendant's photo. Detective Skaggs took the photo line-up to Victim's home about three-and-a-half hours after the robbery and showed it to him. Detective Skaggs testified that his normal practice was to inform the witness that the person responsible for the crime may or may not be in the array. At this point, Victim was unable to make an identification.

On cross-examination, Detective Skaggs denied telling Victim that the suspect who had been apprehended had named the gunman, or that one of the six persons in the photo array was the person whom the suspect had named. Detective Skaggs also denied asking Victim to indicate whether any of the persons in the array were not the gunman.

After being told that Victim was unable to identify anyone, Detective Johnson suggested that Defendant be placed in a physical line-up. Detective Johnson testified that he was with Victim when he viewed the line-up, which consisted of Defendant and three other men. Detective Johnson further testified that Victim immediately identified Defendant as the gunman and that Victim began to breathe heavily and "was clearly shaken" by viewing Defendant. Detective Johnson asked Victim if he wanted Defendant to speak in order to be sure of his identification, but Victim said that there was no need, that he was positive about his identification.

At trial, Detective Johnson testified consistently with his testimony at the suppression hearing. Detective Skaggs did not testify. Victim made an in-court identification of Defendant as the gunman, and after he recounted the events leading up to and following the robbery, Victim again reiterated his in-court identification of Defendant, saying that he "had held me at gunpoint. I am completely confident of that fact. There's absolutely no doubt in my mind."

Here, because there was nothing suggestive about the line-ups, the reliability of Victim's identifications is not at issue. *Williams,* 277 S.W.3d at 852. The trial court did not err in overruling the motion to suppress and in admitting the identification evidence. Point I is denied.

### Batson Challenges

In Points II through IV, Defendant argues that the State's strikes of four African–American venirepersons violated *Batson*[2] because the State's reasons for the strikes were pretextual. We disagree.

We review the trial court's denial of a *Batson* challenge for clear error. *State v. Johnson,* 284 S.W.3d 561, 571 (Mo. banc 2009). When reviewing for clear error, we will not reverse the trial court's decision unless after a review of the entire evidence, we are left with the definite and firm conviction that a mistake was made. *State v. McFadden,* 216 S.W.3d 673, 675 (Mo. banc 2007). In making this determination, we accord the trial court "great deference because its findings of fact largely depend on its evaluation of credibility and demeanor." *State v. Gray,* 887 S.W.2d 369, 384 (Mo. banc 1994).

"Under the Equal Protection Clause, a party may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin or race." *State v. Marlowe,* 89 S.W.3d 464, 468 (Mo. banc 2002). A party objects to such a strike by making a *Batson* challenge, which has three steps. *Batson,* 476 U.S. 79, 106 S.Ct. 1712; *Johnson,* 284 S.W.3d at 571. In the first step of a *Batson* challenge, the defendant must object to the State's peremptory strike of one or more specific venire persons as being for an improper purpose. *Johnson,* 284 S.W.3d at 571. In

the second step, the State must come forward with a race-neutral reason for the strike "that is more than an unsubstantiated denial of discriminatory purpose." *McFadden,* 216 S.W.3d at 675. This explanation is "deemed race-neutral unless a discriminatory intent is inherent in the prosecutor's explanation, even if that explanation has a disparate impact on minority venirepersons." *Marlowe,* 89 S.W.3d at 468. If the State can articulate an acceptable reason, in the third step, the burden shifts to the defendant to show that the State's proffered reasons are merely pretextual and that the strike was racially motivated. *McFadden,* 216 S.W.3d at 675. "In determining pretext, the main consideration is the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." *State v. Johnson,* 207 S.W.3d 24, 35 (Mo. banc 2006). The trial court should consider "whether the explanation is (1) race-neutral, (2) related to the case to be tried, (3) clear and reasonably specific, (4) legitimate." *McFadden,* 216 S.W.3d at 676. The existence of similarly situated white jurors who were not struck is a crucial factor. *Marlowe,* 89 S.W.3d at 469. An identical comparison is not necessary, as "a per se rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable." *McFadden,* 216 S.W.3d at 676.

Here, Defendant challenged four of the State's peremptory strikes. Defendant argues that the State's proffered reasons for the strikes were pretextual because the State did not actually strike similarly-situated white jurors. For all of the challenged venirepersons, the State provided a race-neutral explanation for its strikes.

**2.** *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

With respect to Veniremembers Wooldridge and Harrison, the State explained that it struck the two venirepersons because they slept during *voir dire*. During a break in the defense *voir dire*, the prosecutor made a record that two veniremembers were sleeping. Later, the prosecutor moved to strike both for cause because they had been sleeping. The court stated that it had not observed Veniremember Harrison sleeping and denied the strike. Defense counsel stated during the strike of another black veniremember, Veniremember Pfeiffer, a white juror, had also been sleeping. Defense counsel later moved to strike Veniremember Pfeiffer for cause, but before he could articulate a reason the trial court granted the strike because Veniremember Pfeiffer, who was a St. Louis police officer, knew Detective Skaggs.

The prosecutor also moved to strike Veniremember Wooldridge for sleeping. The court replied that it did notice that Veniremember Wooldridge had her head down but stated that it did not know if she was sleeping. After Defendant's *Batson* challenge, the State provided its race-neutral reason for striking Veniremember Wooldridge. The trial court found the reasons for the challenge not to be pretextual and denied Defendant's motion.

■■■ Defendant's argument that the State failed to strike similarly-situated white jurors for sleeping is unavailing. One white juror was stricken for cause and thus cannot be considered a similarly-situated juror. *State v. Chambers*, 234 S.W.3d 501, 518 (Mo.App. E.D.2007). Similarly, the allegation that the other white veniremember was sleeping was made for the first time during the record on the *Batson* challenges. The prosecutor never acknowledged that she observed this veniremember sleeping, and the trial court never stated that it observed this veniremember sleeping. The trial court found the prosecutor's explanation to be credible under the circumstances, and there is nothing in the record to overcome that determination. Defendant did not meet his burden of demonstrating that the prosecutor's race-neutral explanation for the strike was a pretext for discrimination.

Next, Defendant argues that the trial court clearly erred in overruling his *Batson* challenge to the peremptory strike of a veniremember who had a son that had been incarcerated for shooting another person, and who had failed to disclose a prior arrest.

During the State's *voir dire*, the prosecutor asked if any veniremembers or a family member had been arrested, charged, or convicted of a crime. Veniremember Johnson answered that his son was presently incarcerated for shooting a person and that he was currently corresponding with his son. The prosecutor moved to strike Johnson for cause for failing to disclose a 2002 arrest for nonpayment. The court denied the motion.

After Defendant raised a *Batson* objection, the State explained the reasons for the strike: Veniremember Johnson's nondisclosure of a prior arrest and the fact that his son was in prison. Defendant contends that the State failed to strike two similarly-situated white jurors. However, the record shows that the two white veniremembers were not similarly-situated.

■■■ One veniremember volunteered that he had previous arrests for failure to appear in court on a traffic violation and for failure to upkeep property. He said that charge was dropped. The prosecutor asked whether he had a misdemeanor conviction, and the veniremember answered that it must have been for a failure to appear. Thus, there was no

failure to disclose his prior arrests. The veniremember also indicated that his daughter had twice been arrested for shoplifting (not assault) in the past two months. Because the charged crime in this case involved a gun, the prosecutor's explanation for striking Veniremember Johnson is relevant to the case. *McFadden*, 369 S.W.3d at 739. The prosecutor did move to strike another white veniremember for cause for failing to disclose a stealing arrest or conviction. The court denied the motion. But there is no indication in the record that this veniremember had a close relative in prison, and since one of the reasons used for the strike of Veniremember Johnson did not apply, he is not similarly-situated. *State v. Brooks*, 960 S.W.2d 479, 489 (Mo. banc 1997). Defendant did not meet his burden of demonstrating that the prosecutor's race-neutral explanation for the strike was a pretext for discrimination.

Finally, Defendant argues the trial court clearly erred in overruling a *Batson* challenge to the peremptory strike of a veniremember that the State believed was likely to be sympathetic to criminal defendants.

During the State's *voir dire*, Veniremember White indicated that he taught grades nine through twelve at Vashon High School for sixteen years. The State exercised its peremptory strikes. After Defendant raised his *Batson* challenge, the prosecutor explained the strike:

[THE PROSECUTOR]: Your Honor, Mr. White is a teacher at Vashon High School in the City of St. Louis. He teaches grades nine through twelve, which, as I'm sure many of us in this courtroom know that Vashon is a place where there is high crime. And in my experience, especially with having a sister that teaches in a school where there is high crime and she befriends her students and she has a tendency to listen to what they say and has a more liberal attitude towards crime and the justice system, I believe that teachers that teach high school in these types of neighborhoods and situations have a tendency to be more liberal and believe the defense more than the prosecution.

THE COURT: Mr. [Defense counsel]?

[DEFENSE COUNSEL]: I don't have anybody similarly situated to that. But I mean it's just not logical. Victims also—teachers are victims of crime in high crime areas and they are just as adamant against people who commit crimes as they are helpful. Megan Crane, juror 48, Megan Green, I'm sorry, she was not struck.

[THE PROSECUTOR]: She couldn't be struck. Sorry, Judge.

THE COURT: She's an alternate. The Court finds the reasons given by the State for the preemptory (sic) challenge of Dennis White are not racially motivated or pretextual. The strike will stand and the motion is denied.

▇▇▇ Defendant claims the State failed to strike a similarly-situated white juror, Veniremember Green. However, Veniremember Green was one of the two alternates and would only be similarly-situated to other veniremembers in the alternate pool. *See Goodman v. Holly Angle, LMT*, 342 S.W.3d 458, 464 (Mo.App. W.D.2011) (analyzing *Batson* challenge to strike of alternate juror by comparing that juror to others in the alternate pool). Moreover, the venire panel that remained following strikes for cause only had enough members left to provide for two persons in the alternate pool, which included Veniremember Green. The court expressed the opinion that two alternates were necessary and gave defense counsel the option of either waiving any strikes from the alternate pool or starting jury selection anew. After consulting with De-

fendant, defense counsel announced that the defense was waiving its strike of an alternate. The prosecutor also consented to having the remaining veniremembers serve as the alternates. Under the circumstances, the prosecutor did not have the option of striking Veniremember Green. Defendant failed to meet his burden of showing that the State's explanation for the strike was merely a pretext for discrimination. Points II through IV are denied.

### Defense Witness

In Point V, Defendant argues the trial court erred in preventing him from calling Nick Slack (Slack) as a defense witness which in turn prevented Defendant from presenting his theory that Slack, not Defendant, committed the robbery with Defendant's stepbrother. Defendant argues that the exclusion of this testimony was "extremely prejudicial." We disagree.

 Here, the State filed a motion *in limine* to exclude evidence that a person named Nick Slack (Slack), and not Defendant, committed the robbery with Defendant's stepbrother and the trial court sustained the motion. A trial court's ruling on a motion *in limine* is interlocutory and generally will not support appellate review; and the party offering excluded evidence must demonstrate its relevancy and materiality through an offer of proof. *State v. Jackson*, 386 S.W.3d 810, 818 (Mo. App. S.D.2012).

 To preserve a claim regarding the trial court's exclusion of evidence, the proponent of the evidence must attempt to present the evidence at trial, and if an objection is sustained, the proponent must then make an offer of proof. *State v. Speaks*, 298 S.W.3d 70, 85 (Mo.App. E.D. 2009). The offer of proof must be sufficiently specific to inform the trial court of the specifics of the proposed evidence and demonstrate its admissibility. *Id.*

During the pre-trial conference, the following exchange occurred concerning Slack:

[DEFENSE COUNSEL] Also I will point out just for the record to make sure the Court is aware of this, Mr. [Slack] is in MSI, or maybe CJC at this time, and represented by . . . the Public Defender's Office. They have instructed us they don't want us to talk with him and I wanted that on the record, that he is available to the Court at this point, we have served him with a subpoena, but we've been instructed not to speak with him. And I'm sure Ms. Vaughn would like to be notified if he is ever brought to court.

THE COURT: I understand.

[DEFENSE COUNSEL]: Just wanted the Court to know that.

THE COURT: Incommunicado to you?

[DEFENSE COUNSEL]: That's correct, Your Honor, even though we would like to talk with him. Legally and ethically I cannot at this time.

THE COURT: I understand. Anything further from the State?

[THE PROSECUTOR]: No, Your Honor.

 At trial, during the testimony of Defendant's mother, defense counsel indicated that he wanted to present evidence of Slack through the Defendant's mother's testimony and that of the other witnesses for whom he made offers of proof. Defense counsel also asked the court to execute the *subpoena* that had been served on Slack and force him to testify, which the trial court denied. While Defendant did seek to have Slack called as a witness at trial, once that request was denied defense

counsel did not ask the court to have Slack brought into court for the purpose of making an offer of proof. Furthermore, Defendant did not make any further offers of proof as to the content of Slack's expected testimony. *Speaks,* 298 S.W.3d 70, at 85; *Jackson,* 386 S.W.3d at 818–19. As such, Defendant has not preserved any claim of error in the exclusion of Slack as a witness. We find no error, plain or otherwise. Point V is denied.

*Conclusion*

The judgment is affirmed.

KURT S. ODENWALD and ANGELA T. QUIGLESS, Judges, concur.