STATE of Missouri, Respondent,

v.

Winston B. CLAY,
Defendant/Appellant.

No. ED 104095

Missouri Court of Appeals,
Eastern District,
DIVISION FOUR.

FILED: September 19, 2017

Katharine P. Curry, for Appellant.

Nathan J. Aquino, for Respondent.

## OPINION

Honorable Mary K. Hoff

Winston B. Clay (Defendant) appeals from the judgment upon his convictions following a jury trial for three counts of stealing over $500, in violation of Section 570.030, RSMo 2000[1]; one count of attempted stealing, in violation of Sections 564.011 and 570.030; five counts of forgery, in violation of Section 570.090; and four counts of first-degree trespass, in violation of Section 569.140. The trial court sentenced Defendant to a total of five years' imprisonment.

### Factual and Procedural Background

Defendant was charged with 13 total counts involving 5 separate properties, for forgery, trespassing, and stealing by deceit occurring between December 2012 and August 2013.

With respect to the first property, located at 926 Justice Court, Defendant was charged with two counts of forgery for filing an affidavit and a mechanic's lien against the property and also charged with trespassing and with stealing by deceit over $500 for renting that property to another person (Counts 1 through 4).

With respect to the second property, located at 11503 Rosary Lane, Defendant was charged with two counts of forgery for filing a "Possession of land and Fixtures" and a mechanic's lien against the property (Counts 5 and 6).

With respect to the third property, located at 1028 Patience Drive, Defendant was charged with trespassing, forgery for filing a mechanic's lien against the property, and stealing by deceit over $500 for renting that property to another person (Counts 7, 8, and 13).

With respect to the fourth property, located at 3006 Wood Poppy, Defendant was charged with trespassing and with stealing by deceit over $500 for renting that property to another person (Counts 11 and 12).

With respect to the fifth property, located at 9585 Wilson Bridge Road, Defendant was charged with trespassing and attempted stealing by deceit over $500 for executing a lease for that property with other persons (Counts 9 and 10).

Defendant's trial was held from August 11, 2015 to August 13, 2015. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial: Defendant operated under two names: Winston Clay and Maulana Al-Hasan. Defendant stated that, after hearing about mortgage fraud in the 2000s and what banks were doing with homes, he formed Khan El Land Acquisition LLC ("Khan El Land Acquisition"), and Estate of Winston Barrington Clay Holding Company ("Clay

---

1. Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

Holding Company"). Defendant admitted that he located properties that were abandoned, "moved in on them," and rented them out. Defendant stated that he worked with Todd Edwards ("Edwards") to execute his scheme.

Tracy Franklin ("Franklin") and her ex-husband owned the property at 926 Justice Court. In November 2011, Franklin moved out of the house after her husband had already left. In 2015, the bank foreclosed on the house. Franklin testified that she found out that someone was living in the house in 2013 when she investigated a lien against the property from the Metropolitan Sewer Department ("MSD").

On May 28, 2013, Defendant filed a mechanic's lien in the circuit clerk's office against Franklin's home on behalf of Khan El Land Acquisition for work allegedly done on the property. The lien was signed by Al-Hasan. Franklin testified that she never gave Defendant permission to do any work on the house, nor did Defendant ask her to perform work on the house. On January 18, 2013, Defendant filed a document in the circuit clerk's office titled, "Notice of Possession of Land and Fixtures Under Claim of Right Adverse Possession for Color of Title" that purported to grant 926 Justice Court to Khan El Land Acquisition. Franklin testified that she never granted Khan El Land Acquisition the property. Franklin also received a lien against the house from MSD for approximately $500 after she had already moved out and the water had been turned off.

Meanwhile, in December 2012, Bertha Williams ("Williams") rented 926 Justice Court, and entered into a lease that was signed by Edwards and listed Khan El Land Acquisition as the landlord. Williams testified she paid Edwards $650 a month for rent. A few months later, Franklin, who had not been living at the property,

received a lien from MSD; she contacted police. In July 2013, Franklin accompanied police to her house and found people living there. Later, Defendant and Edwards also came to the house, claiming to own it. When Franklin asked about the items she had left in the property, including furniture, a computer, a grill, and a big-screen television, Defendant said "something to the effect of it's all gone."

In December 2011, Robert and Christine Smith (the "Smiths") purchased the property on 11503 Rosary Lane. In March 2012, the Smiths moved out of the house and later in 2012, the home was foreclosed upon.

On May 25, 2012, Defendant filed in the circuit clerk's office a document titled "Possession of Land and Fixtures Under Claim of Right Adverse Possession for Color of Title" against the property. The document was signed by Al-Hasan and listed Khan El Land Acquisition as the grantor and the grantee. Wife testified that she never sold or gave the house to Defendant or his companies.

On August 14, 2012, Defendant filed a mechanic's lien in the clerk's office against the property for work allegedly done. The lien was on behalf of Khan El Land Acquisition and signed by Al-Hasan, and listed June 23, 2012, as the date work was last performed; however, the attached hardware-store receipts were dated June 26, June 27, July 5, and July 30. The sum of the value of materials and labor that Defendant listed was less than the total amount of $968.81 that Defendant filed the lien for. Wife testified that there was never any permission given either to Defendant or to Khan El Land Acquisition permission to be in the home or do any work in the home.

In 2001, Albertine Nichols ("Nichols") purchased the home at 1028 Patience

Drive; she moved out in 2009. At the time, Nichols believed that her ex-husband was selling the house and, even though her name was still on the deed, she was not really dealing with the property. A few years later, Nichols was contacted by police and informed that someone was living in her house.

On May 28, 2013, Defendant filed a mechanic's lien in the circuit clerk's office on behalf of Khan El Land Acquisition, for work allegedly done on the house. The lien was signed by Al-Hasan. Nichols testified that she never knew Defendant or gave him or Khan El Land Acquisition permission to be in her house or perform work there. Nichols also testified that she received a bill from MSD for over $600 or $700 for a period that she was not living at the house. Nichols testified that because of these occurrences, her credit was ruined.

Meanwhile, in March 2013, Tenniel Luss ("Luss") began renting the house from Edwards, who claimed to own the house and said Defendant was his property manager. Luss testified she paid $650 per month and moved out of the house in February 2015.

In 2008, Jason Pettis ("Pettis") purchased the property located at 3006 Wood Poppy and moved out in 2010. Pettis testified that he attempted to sell the house on a short-sale up to June 2013, but could not do so because someone was living there. Eventually, the bank eventually foreclosed on his home. Pettis testified that his credit was ruined because of the failed short-sale and foreclosure. Just like the other victims, Pettis testified that he did not sell the house to Khan El Land Acquisition, nor did he give Khan El Land Acquisition or Defendant permission to be in his house, work on his house, or rent his house.

Meanwhile, from June 1, 2013 to December 31, 2013, Joclyn Jones ("Jones") entered into a lease with Edwards to rent Pettis's house. Jones testified she paid a $1,300 security deposit on the home and paid $750 per month in rent.

In March 2006, Marilyn Tate ("Tate") purchased the property at 9585 Wilson Bridge Road. After filing for bankruptcy, she moved out of the house October 1, 2012. On June 11, 2013, Regions Bank foreclosed on the house and put it on the market for sale. Tate testified she never gave Defendant permission to be in the house or to rent the house. Additionally, an official from Regions Bank, who became the owner after foreclosure, testified that bank never gave anyone permission to be on the property, rent it, or perform work on it.

Meanwhile, on May 30, 2013, Katrina Archie ("Archie") and a friend signed a lease to rent the house from June 1, 2013, to December 1, 2013. The lease named Khan El Land Acquisition as the landlord. Archie and her friend were to pay $700 a month in rent. Archie testified that before they moved in, Defendant told them that if they worked on the house, they would get reimbursed for the cost of the work. Archie testified that they spent at least $1,000 on the property, but Defendant never paid them. Some of the receipts that Defendant attached to the mechanic's lien for the Rosary Lane property were Archie's receipts for items she had purchased to improve the Wilson Bridge Road property. Archie and her friend were never able to move into the house because they could not get an occupancy permit because Defendant was not the owner of the property.

At trial, Defendant represented himself and admitted that he mailed letters to the homeowners stating that if the homeowner did not respond to Defendant by a certain date, then Defendant would perform work

on the house and file a lien against the house if he was not paid for that work. Defendant admitted that Franklin and Smith never gave Defendant permission to take their homes on Justice and Rosemary. Defendant also admitted that he collected rent and/or deposits for the 926 Justice property, the 1028 Patience property, and the 3006 Wood Poppy property. Defendant admitted that he executed a lease for the 9585 Wilson property, though the tenants never moved in. He admitted that the tenants spent $1,000 fixing the house and that Defendant gave them a receipt for that amount, but he never paid them the $1,000. Defendant further admitted that he intended to collect rent from the individuals. Finally, Defendant admitted that he knew the mechanic's liens he filed would place a lien on the properties, which would cloud the title of the properties.

At the conclusion of trial, Defendant was found guilty on all counts and sentenced to a total of five years' imprisonment.[2] This appeal follows.

## Standard of Review

■ We note that neither of Defendant's points on appeal was preserved for appeal. Consequently, his claim is reviewable, if at all, only for plain error. Rule 30.20. This Court engages in a two-step process to determine if plain error exists. State v. Baumruk, 280 S.W.3d 600, 607 (Mo. banc 2009). First, the Court determines whether the claim of error facially establishes substantial grounds for believing that a manifest injustice or miscarriage of justice has resulted. Id. All prejudicial error does not constitute plain error, however. Id. Plain error must be evident, obvious, and clear. Id. Second, if there is plain error under the first step, the Court must determine "whether the claimed error resulted in manifest injustice or a miscarriage of justice." Id. at 607-08. Manifest injustice is a higher standard than prejudice. Deck v. State, 68 S.W.3d 418, 424 (Mo. banc 2002). On plain error review, the defendant must show that the error affected his or her rights so substantially that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. Id.

## Felony Stealing Offenses

■ In his first point, Defendant argues, and the State concedes, that the trial court plainly erred in entering judgment for felony stealing in connection with stealing over $500.

Defendant was convicted of three counts of stealing by deceit over $500 and one count of attempted stealing by deceit over $500, for appropriating and attempting to appropriate U.S. currency valued at over $500. Defendant did not object at trial, and review, if any, is for plain error.

Defendant was convicted of class C felony stealing under Section 570.030 for stealing currency valued at over $500, which provides in pertinent part:

1. A person commits the crime of stealing if he or she appropriates proper-

---

**2.** At sentencing, Sergeant Andrew Soll ("Sgt. Soll") testified that the investigation against Defendant included at least 6 other homes not charged in this case, and that he was certain there were additional houses, but had to stop the investigation at that point to conserve police resources. Sgt. Soll also testified that Defendant filed multiple complaints against him, including but not limited to a small-claims action, a false-criminal-charges complaint, a complaint against him and a prosecutor with the Missouri Ethics Commission, a federal civil rights lawsuit against him and a couple other officers and the former police chief. Sgt. Soll testified that in all the cases he has investigated, Defendant was the only person to retaliate against him.

ty or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion.

* * *

3. Notwithstanding any other provision of law, any offense in which the value of property or services is an element is a class C felony if:

(1) The value of the property or services appropriated is five hundred dollars or more but less than twenty-five thousand dollars.

* * *

8. Any violation of this section for which no other penalty is specified in this section is a class A misdemeanor.

Since Bazell,[3] Missouri courts have consistently held that Section 570.030.3 is inapplicable to the offense of stealing, regardless of the particular provision of Section 570.030.3 under which enhancement is sought. State v. Smith, 522 S.W.3d 221, 230-31 (Mo. banc 2017). In State v. Smith, the Missouri Supreme Court specifically held that the felony-enhancement provisions of Section 570.030.3 do not apply to a charge of stealing over $500. Smith, 522 S.W.3d at 229-32. Pursuant to Smith, we reverse Defendant's felony-stealing convictions and remand for resentencing and entry of misdemeanor stealing.

## Excluded Testimony

In his second point, Defendant argues the trial court erred in excluding Defendant's testimony that he was pursuing a good faith defense under adverse possession. We disagree.

Pro se litigants are bound by the same standards as parties represented by attorneys, and are therefore not entitled to indulgences they would not have received had they been represented by counsel. State v. Chambers, 481 S.W.3d 1, 10, fn. 4 (Mo. banc 2016) (citing State v. Jackson, 386 S.W.3d 810, 817-18 (Mo. App. S.D. 2012)).

"To preserve a claim of improperly excluded evidence, the proponent must attempt to present the excluded evidence at trial and, if it remains excluded, make a sufficient offer of proof." State v. Hunt, 451 S.W.3d 251, 263 (Mo. banc 2014). The purpose of an offer of proof is to preserve the evidence so the appellate court "understands the scope and effect of the questions and proposed answers." Hunt, 451 S.W.3d at 263 (quoting State v. Tisius, 92 S.W.3d 751, 767-68 (Mo. banc 2002)). Here, the record shows that Defendant did not make an offer of proof and failed to explain what specific evidence the trial court allegedly excluded. Additionally, Defendant did not file a motion for new trial to preserve this issue. State v. Winfield, 5 S.W.3d 505, 511 (Mo. banc 1999) (To preserve an issue for appeal, it must also be presented in the motion for new trial).

Throughout Defendant's testimony, the trial court never interrupted Defendant or excluded any evidence, and the prosecutor made only one objection, a relevancy objection concerning testimony about religion, not any testimony about adverse possession. Although the trial court expressed its opinion that adverse possession would not be a valid defense in this case because Defendant had not satisfied its elements, it never made any ruling that Defendant would be excluded from presenting evidence that he was acting in good faith

3. In State v. Bazell, 497 S.W.3d 263 (Mo. banc 2016), the Court held that because the definition of stealing in Section 570.030.1 does not contain as an element "the value of property or services," "Section 570.030.3 does not apply." Bazell, 497 S.W.3d at 267. However, Bazell did not directly address stealing-over-$500 charges.

based on a pursuit of adverse possession. Defendant was permitted to testify concerning his abandoned-property defense and that he believed the process he was using was legal. Defendant also elicited testimony from various witnesses regarding adverse possession and abandoned property. Defendant has not identified what evidence the trial court improperly excluded.[4]

Defendant argues for the first time on appeal that the trial court mistakenly understood the issue at trial to be about the legal ownership of the properties rather than Defendant's alleged claim that he was merely pursuing the doctrine of adverse possession, negating any purpose to defraud. But Defendant never presented this theory to the trial court. In fact, during the hearing, he explained that his purpose for raising the doctrine of adverse possession was in regards to his prosecutorial-misconduct claim, not for any defense at trial. Therefore, any alleged prejudice was created by Defendant's own conduct. State v. Copeland, 95 S.W.3d 196, 202 (Mo. App. S.D. 2003) (a party may not complain of prejudice which his own conduct creates).

Here, there was no error, plain or otherwise. The record shows that Defendant did not present his defense theory to the trial court and made no offers of proof during trial; therefore, his claim is unpreserved. Moreover, Defendant has neither identified what evidence the trial court allegedly excluded nor which of the prosecutor's objections to Defendant's evidence were improper. Finally, any alleged prejudice was created by Defendant's own conduct. Point two is denied.

---

4. The trial court excluded only two documents pertaining to adverse possession, printed off the internet, and that evidence was excluded on discovery and foundational

## Conclusion

We affirm Defendant's convictions and sentences for forgery and trespassing. We reverse Defendant's convictions for felony stealing and felony attempted stealing. Additionally, we remand to the trial court to enter judgments on these counts as misdemeanors and to resentence Defendant accordingly.

Colleen Dolan, Presiding Judge and Lisa S. Van Amburg, Judge: concur

grounds, not because Defendant was prohibited from introducing evidence concerning adverse possession generally. Defendant has not alleged that those rulings were improper.