

## In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101190 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Hon. Thomas J. Frawley |
| DARIUS MORGAN, | ) | |
| | ) | Filed: April 28, 2015 |
| Appellant. | ) | |

Darius Morgan appeals from the judgment entered on his convictions after a jury trial on one count of robbery in the first degree and one count of armed criminal action. We affirm.

Late one night in August of 2011, the victim went to a gas station with his two-year-old niece. He was pumping gas when he was approached by two men. They were only a few feet from the victim, and one of the men pointed a revolver at him and told him to give them everything in his pocket or he would shoot him. The victim handed the robber fifty dollars in cash and his car keys. The robber said he was going to get in the car, and the victim pleaded to be allowed to get his niece out of the back seat first. Eventually, the robber allowed him to get the child, but told the victim he "should shoot" him. The victim turned around to shield his niece, at which point the robber jumped into the car with the other man and drove away. The whole event took about three minutes.

The victim called the police immediately and gave a description of the car and the robber. Within a half hour, the police found the car and, after a chase, pulled over the car. There were

three men in the car, including Morgan. They were arrested and taken to the police station for a lineup in front of the victim. The first lineup included one man from the car and jail volunteers. The victim did not identify anyone in that lineup as being involved in the robbery. The second lineup had the other man from the car and jail volunteers, one of whom had been used in the first lineup as well. Again, the victim identified no one. The third lineup included Morgan and two jail volunteers who had been in the previous lineups. The victim immediately identified Morgan as the robber; he recognized his face in a "split second."

Morgan was charged with robbery in the first degree and armed criminal action. The victim and the officers involved in the arrest and lineups testified for the State, and the defense put on no evidence. The jury found him guilty, and Morgan was sentenced to fifteen years for the robbery and ten years for the armed criminal action, to be served concurrently. This appeal follows.

In his first point, Morgan argues that the trial court erred in admitting pre-trial identification evidence because the physical lineup from which the victim identified Morgan was impermissibly suggestive and not reliable. He also contends that the victim's in-court identification of Morgan was inadmissible for the same reasons. The trial court has broad discretion to admit or exclude evidence. State v. Kayser, 397 S.W.3d 37, 39 (Mo. App. E.D. 2013). We will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous, and we will reverse admission of testimony only if the trial court abused its discretion. Id. We review the record made at the suppression hearing as well as the evidence introduced at trial. State v. Thomas, 407 S.W.3d 190, 194-95 (Mo. App. E.D. 2013). But we consider only those facts and reasonable inferences therefrom that are favorable to the trial court's ruling. Id. at 195.

The test for the admission of identification testimony is two-pronged. Id. The first prong asks whether the pre-trial identification procedure was impermissibly suggestive. Id. If so, then we assess the impact that the suggestive procedure had on the reliability of the identification. Id. "Reliability is the linchpin in determining the admissibility of identification testimony. But a defendant must clear the suggestiveness hurdle before procuring a reliability review." Id. Morgan has not cleared the suggestiveness hurdle.

"A pretrial identification procedure is unduly suggestive if the identification results not from the witness's recall of first-hand observations, but rather from the procedures or actions employed by the police." State v. Mullins, 340 S.W.3d 311, 314 (Mo. App. E.D. 2011). Morgan argues that the lineup was unduly suggestive because two of the people in the lineup in which he was identified had been used in the two previous lineups and ruled out by the victim already, increasing Morgan's chances of being identified. But the victim did not realize at the time of the lineups that participants were being re-used; therefore, this procedure could not have affected the victim's selection of Morgan. Morgan also argues the lineup was suggestive because he stood out from the other participants in that he was the only one in a dark shirt, the only one without a jail-processing armband and the only one with freckles. A lineup will be deemed impermissibly suggestive on the basis of the color or characteristics of clothing only if the clothing is the *sole* basis for identification. State v. Weaver, 912 S.W.2d 499, 520 (Mo. banc 1995). Likewise, dissimilarity in physical appearance alone is insufficient to establish impermissible suggestion. State v. Chambers, 234 S.W.3d 501, (Mo. App. E.D. 2007). The victim testified he identified Morgan because he recognized his face—not his clothing—and did not even notice the armbands or Morgan's freckles during the lineup. Thus, neither his physical appearance nor his clothing affected the victim's identification of Morgan. Rather, the victim identified Morgan based on his

first-hand observations:  he identified Morgan in a "split second" as the guy who pointed the gun at him because he "knew his face."

We need not address the reliability prong, but we point out that all of the factors we would consider if that analysis were appropriate show that the lineup and in-court identifications were reliable.  Viewed favorably to the trial court's rulings, the evidence showed that the victim had adequate opportunity to view Morgan's face during the robbery; he was very focused on Morgan's face during the crime; the inaccuracies in the victim's description of Morgan involved his clothing, which could have been discarded or changed before the arrest; the victim was 100% certain that Morgan was the robber; and only a few hours passed between the crime and the lineup.  See State v. Dizer, 119 S.W.3d 156, 163 (Mo. App. E.D. 2003).

The trial court did not clearly err in denying the motion to suppress or abuse its discretion in admitting the identification evidence.  Point I is denied.

In his second point, Morgan contends the trial court plainly erred by sustaining the State's objection when he asked an officer—who was not involved in conducting the lineup, but only there to observe—about his opinion as to the quality of the lineup.  Morgan contends the officer would have said the lineup was so bad that he went to his supervisors and told them it was "garbage."  Morgan wholly failed to demonstrate at trial or on appeal that the officer was qualified to offer this opinion or otherwise how his opinion was relevant.  The officer was still in a probationary period having only been on the police force for two weeks; he had no formal training in lineups and little, if any, informal training; he had never conducted a lineup at the time of Morgan's arrest; and he was not prepared to conduct a lineup at that time.  Moreover, Morgan elicited no information as to what training or experience in lineups the officer may have gained since the time of Morgan's arrest.  Thus, the officer was not shown to be an expert at the

time of the lineup or at the time of trial.  See State v. Williams, 427 S.W.3d 259, 266 (Mo. App. E.D. 2014) ("An expert is qualified if he or she has knowledge from education or experience which will aid the trier of fact.").

The trial court did not abuse its discretion in excluding this officer's opinion, much less did it commit plain error by doing so.  Morgan has suffered no manifest injustice or miscarriage of justice on this ground.  Point II is denied.

In his third point, Morgan contends the trial court plainly erred in classifying him as a prior offender because the indictment did not set forth the essential facts as to that status. Morgan seeks a complete reversal of the judgment and sentence on this ground, and remand for a new trial.  The State concedes that the indictment did not contain any assertions regarding Morgan's prior offender status, as required by Section 58.021.1.  The State's failure to plead the facts necessary to establish Morgan's prior offender status is error.  Thus, the only question is whether it rises to level of plain error in that it caused Morgan to suffer a manifest injustice or miscarriage of justice.

The length of sentence would be no different if Morgan had not been classified as a prior offender.  Rather, the only direct legal consequence is loss of the statutory right to have the jury advise the court on sentencing.  Sections 557.036.7; State v. Drudge, 296 S.W.3d 37, 41 (Mo. App. E.D. 2009).  But that statutory right can be waived when the defendant fails to assert it. Drudge, 296 S.W.3d at 41.  Here, during the trial and before submission of the case to the jury, the trial court asked counsel if he had discussed with Morgan an exhibit showing that Morgan had a prior conviction.  Counsel stated that he had and that they admitted Morgan had a prior conviction in federal court.  The court received the exhibit into evidence, made a finding that Morgan was a prior offender and explained that, as a result of that finding, Morgan would be

5

sentenced by the court instead of the jury. Counsel stated he had nothing further on that issue. By failing to assert the right when directly asked about the prior conviction and told that it would mean sentencing by the court instead of the jury, Morgan has waived that right. See id.

Morgan also contends that his prior offender classification caused a manifest injustice because it subjects him to negative parole consequences. We are aware that our court has stated that being improperly classified as a prior offender has the possibility of affecting future parole eligibility. See id.; State v. Jolley, 45 S.W.3d 549, 552 (Mo. App. E.D. 2001); State v. Jones, 296 S.W.3d 506, 514 (Mo. App. E.D. 2009); see also State v. Halk, 955 S.W.2d 216, 217 (Mo. App. E.D.1997) (persistent offender); State v. McGee, 284 S.W.3d 690, 713 (Mo. App. E.D. 2009) (persistent offender).[1] In those cases, we cited to the statute addressing minimum prison terms and to department of corrections regulations for parole eligibility and parole guidelines. See Halk, 955 S.W.2d at 217; Drudge, 296 S.W.3d at 41; Jones, 296 S.W.3d at 514. But none of those opinions actually analyze the language in any of those statues or regulations.

As it turns out, none of those provisions actually speak in terms of the offender's classification by a trial court as a prior, persistent or dangerous offender under section 558.021. Section 558.019.2 dictates that an offender's minimum prison term generally depends on the offender's number of "previous prison commitments." See Section 558.019.2(1)-(3).[2] As the Southern District recently found, that statute does not require a separate finding by the trial court that the offender is a prior, persistent or dangerous offender. State v. Currie, 2014 WL 2818989 *2 (M. App. S.D. 2014). Similarly, the department of corrections regulations cited in previous

---

[1] In those cases, the courts removed the erroneous classification in the judgments to prevent perceived possible negative parole consequence, but did not remand for resentencing on that ground.

[2] In prior versions of this statute, the minimum prison terms in subsection 2 were dependent on whether the offender was a "prior offender," "persistent offender" or "class X offender." That was changed in 1993 to "has one prior felony conviction," "has two prior felony convictions" and "has three or more prior felony convictions." Then in 1994, those phrases were amended again to the current version in which the minimum term is based on the number of "previous prison commitments."

cases as containing potential parole consequences for prior or persistent offenders refer only to the offender's prior criminal history, not to classifications by the trial court. See 14 CSR 80-2.010 and 14 CSR 80- 2.020. Thus, it is not the *finding* by the trial court that one is a prior offender that affects parole eligibility under these statutes and regulations, but the *fact* of one's prior criminal history or previous prison commitments.

Moreover, in this case, Morgan was convicted of robbery in the first degree, which is a dangerous felony,[3] and his parole eligibility is therefore governed separately by Section 558.019.3. That section requires dangerous felons to serve 85% of their prison term. Like other minimum prison terms, the 85% rule is "not based on a prior, persistent, or dangerous offender designation." Currie, at 2014 WL 2818989 at *3. Thus, again, it is the not the *finding* by the trial court that Morgan is a prior offender that affects his parole eligibility in this case, but the *fact* that he committed a dangerous felony.

Morgan has failed to identify any actual or even potential source of negative consequence resulting from his classification as a "prior offender," and thus has failed to demonstrate manifest injustice. Point III is denied.

The judgment is affirmed.

ROBERT G. DOWD, JR., Judge

Kurt S. Odenwald, P.J. and
Gary M. Gaertner, Jr., J., concur.

---

[3] See section 556.061(8).