

# In the Missouri Court of Appeals

# Eastern District

DIVISION ONE

STATE OF MISSOURI,           )      No. ED106522

                                   )

     Respondent,            )      Appeal from the Circuit Court

                                   )      of the City of St. Louis

vs.                                )

                                   )      Hon. Christopher E. McGraugh

DALE L. WOLFORD,          )

                                   )      Filed:

     Appellant.             )      August 27, 2019

Dale Wolford ("Defendant") appeals from the judgment and sentence entered after a jury trial on his convictions for assault in the first degree, unlawful use of a weapon and associated counts of armed criminal action. We affirm the judgment and sentence on the convictions, as modified by this opinion.

The sufficiency of the evidence is not challenged on appeal. Defendant and his accomplices drove a stolen car into the Central West End neighborhood at approximately 4:30 a.m. on July 14, 2015 looking for someone to rob. They parked and some of them walked around for a while. Off-duty police officer Charles Lowe ("Victim") was working a secondary job that night patrolling the Maryland Plaza shopping area in the Central West End. He was sitting in his personal vehicle when he observed Defendant and another man standing on a corner, and at some point another man joined them and then they all walked away. The group got back into their car, drove up to and parked right in front of Victim's

car. Defendant opened the car door, illuminating the inside of the vehicle, at which point Victim recognized the men inside as the ones he had seen standing on the corner. Defendant got out of the car with a gun in his hand and began firing at Victim. Victim shot back. Defendant ran away on foot, continuing to shoot over his shoulder as he fled. Victim shot at the car because it was blocking him in, and the accomplices drove away. Victim was wearing his bullet-proof vest and was taken to the hospital for his injuries. There, he gave a description of the incident and the suspects. The car was recovered at the home of one of the accomplices, Edward Davis, and based on information obtained from him, the police compiled a photo lineup from which Victim identified Defendant as the shooter. Victim was "a hundred percent" sure Defendant was the person who shot him.

The evidence at Defendant's four-day jury trial included: the testimony of Victim, witnesses who spoke with or saw Defendant and his accomplices that night and multiple investigating officers; Central West End neighborhood surveillance camera footage of the incident; DNA, fingerprint and other physical evidence recovered from the car used by Defendant and his accomplices; ballistics and other physical evidence recovered from the scene and from Victim's car; the photo lineup in which Victim identified Defendant as the shooter; and a transcript of an interview with Defendant's cousin, in which she told police that Defendant had admitted his involvement in the incident and that he had shot at Victim four times but did not know he was a police officer. The jury found Defendant guilty on the assault in the first degree and unlawful use of weapon for shooting at a motor vehicle counts, as well as the accompanying armed criminal action counts.[1] This appeal follows.

**Pre-Trial Identification**

---

[1] The jury found Defendant not guilty on the assault on a law enforcement officer and associated armed criminal action counts.

Defendant argues the trial court erred in denying his motion to suppress and in admitting Victim's pre-trial identification of Defendant from a photo lineup. He argues the lineup was impermissibly suggestive and the identification was not reliable. We disagree.

We will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous, and we will reverse admission of testimony only if the trial court abused its discretion. *State v. Morgan*, 480 S.W.3d 349, 351 (Mo. App. E.D. 2015). We review both the evidence at the suppression hearing and the evidence introduced at trial on this issue, viewing it favorably to the trial court's ruling. *Id*. The test for the admission of identification testimony is two-pronged:

> The first prong asks whether the pre-trial identification procedure was impermissibly suggestive. If so, then we assess the impact that the suggestive procedure had on the reliability of the identification. Reliability is the linchpin in determining the admissibility of identification testimony. But a defendant must clear the suggestiveness hurdle before procuring a reliability review.

*Id*. (internal quotation marks and citations omitted). A pre-trial identification procedure is unduly suggestive only if the identification results not from the witness's recall of first-hand observations, but from the procedures or actions employed by the police. *Id*. Defendant's only basis on appeal for asserting that the lineup was suggestive is that he was wearing an orange hoodie—while the others were in gray, white or black clothing—and that he had a tattoo the others did not have.[2] These arguments do not "clear the suggestiveness hurdle." *Id*.

---

[2] In this Point Relied On, Defendant also asserts "Further, the police department failed to follow policies and procedures, including obtaining a blind administrator, and utilizing the 'folder shuffle' method pursuant to Special Order 9-01." But Defendant has not developed this contention in any way in the argument portion following this Point, beyond simply reciting the fact that these procedures were not used. The failure to

First, the officer took measures to eliminate the distinguishing feature of Defendant's tattoo. The crime matrix system generated five photographs of people similar in age, range, height, weight and complexion to Defendant. Defendant had a small tattoo under his eye, but no one else in the system who otherwise looked similar to Defendant also had a similar tattoo. The officer put a black mark over Defendant's tattoo and the same black mark in the same spot on each of the other photographs "so that the tattoo itself was not a distinguishing characteristic." Defendant cannot show that the tattoo had anything to do with Victim's identification of Defendant as the shooter. And, in any case, "dissimilarity in physical appearance alone is insufficient to establish impermissible suggestion." *Id*. (nothing unduly suggestive about a lineup where defendants was only one with freckles). Likewise, although Defendant's shirt was a distinctive color compared to the others, there is nothing in this record to indicate that Victim's identification of Defendant in the photo lineup was based on what clothing Defendant was wearing. "A lineup will be deemed impermissibly suggestive on the basis of the color or the characteristics of clothing only if the clothing is the *sole* basis for identification." *Id*. at 352 (emphasis in original). Defendant has failed to show that Victim's pre-trial identification was the result of something other than his recall of first-hand observations of Defendant's physical features.[3] The trial court did not clearly err in denying the motion to suppress or abuse its discretion in admitting the pre-trial identification evidence.

support a contention raised in a point relied on with authority and argument beyond conclusions is deemed abandonment of that contention. *State v. Banks*, 434 S.W.3d 100, 104 (Mo. App. E.D. 2014).

[3] Because he has not shown the procedure was unduly suggestive, we need not address the reliability prong. But we note that if we were to consider the relevant factors, they show the identification was reliable: Victim testified that he had a "clear vision" of Defendant's face during the shooting and was "so focused" that time was moving in "super, super slow motion;" the area was lit by street lamps and headlights, and Victim was paying special attention knowing he would have to give a description of the shooter later; most of the Victim's description was consistent with Defendant's appearance, only the height was off by a few inches and he

4

**Admission of Firearm**

Defendant contends the trial court abused its discretion by admitting into evidence a firearm the police recovered from the car used by Defendant and his accomplices in this crime. Though none of the ballistics evidence found at the scene matched this weapon—and therefore the State did not argue that this firearm was the one used in this shooting—the weapon did contain a mixture of Defendant's DNA and the DNA of others, and the trial court concluded the firearm was logically relevant because it connected Defendant to the car. Defendant insists that the firearm was inadmissible under the general proposition that weapons *unconnected* with either the accused or the offense lack probative value and are prejudicial. *See generally State v. Grant*, 810 S.W.2d 591, 592 (Mo. App. S.D. 1991). But Defendant conveniently ignores the salient facts *connecting* the firearm in this case to the crime scene and to Defendant: it was found in the car used during commission of the crime and the firearm had Defendant's DNA on it. Because this firearm was not unconnected to the Defendant and the crime, it was not an abuse of discretion to admit it into evidence. *See generally State v. Hosier*, 454 S.W.3d 883, 895–96 (Mo. banc 2015) (photos of 14 weapons and unspent ammunition found in car defendant used to flee murder scene, but that were not used during crime, directly connected to defendant and the charged crime); *see also State v. Woods,* 9 S.W.3d 634, 636–37 (Mo. App. E.D. 1999) (weapon seized at scene of crime was connected to the crime "whether or not there was evidence to support a finding it was the weapon defendant possessed and fired"). Defendant has wholly failed to demonstrate any error in this point.

---

simply had not noticed the small tattoo on Defendant's brown complexion; Victim was one hundred percent certain of his lineup identification, which he made only one day after the crime. *See generally State v. Watkins*, 527 S.W.3d 204, 211 n.6 (Mo. App. E.D. 2017) (listing factors).

**Instructions**

Defendant contends the trial court erred in submitting the verdict-directors in this case. Defendant argues these instructions erroneously included accomplice language requiring the jury to find that "defendant acted together or aided Dale Wolford." There was no objection at trial or in post-trial motions to any instructions based on the inclusion of such nonsensical language positing that the defendant must have acted together with or aided himself. And with good reason: based on our review of the record, no such language was in any of the instructions that were *actually* given to the jury in Defendant's case. The set of challenged accomplice instructions were from Defendant's accomplice's trial, which occurred before the same judge just days after Defendant's trial concluded.

Defendant and Edward Davis were charged together by indictment. Defendant was tried first as the shooter, not as an accomplice, and the evidence was that Defendant was the sole person who shot at the victim and that Davis was the driver. Davis's trial did not occur until after Defendant's, and Davis was tried on an accomplice theory. There are two sets of instructions in Defendant's legal file: a "dirty" set and a "clean" set. Typically the dirty set is the working copy, and the clean set is the one sent with the jury when they retire to deliberate. The clean set should be identical to the dirty set, except that references to the instruction's source and submitting party are removed. Here, however, the two sets of instructions in Defendant's legal file do not match at all, and they are quite clearly from two different trials. The dirty set contains verdict forms referring to the defendant as "Dale Wolford," and there is none of the challenged accomplice language anywhere in this set; rather each instruction posits Defendant's guilt based on his own actions alone. This is the set of instructions the trial court read verbatim on the record to the jury at Defendant's trial.

6

The clean set, on the other hand, contains verdict forms identifying the defendant as "Edward Davis," and the verdict-directors contain the challenged accomplice language, basing Davis's guilt for the shooting on the theory that he acted together with or aided Dale Wolford.

It is difficult to comprehend the basis for Defendant's claim of error here. As just shown, even a cursory review of this clean set containing the accomplice language—the one on which Defendant relies to demonstrate the jury was erroneously instructed—reveals that it is from Davis's trial, conducted days after the conclusion of Defendant's trial. Moreover, this is the set of instructions found in the legal file from Davis's appeal, which was also before this Court and which we take judicial notice of. *See Snyder v. State*, 288 S.W.3d 301, 302 n.1 (Mo. App. E.D. 2009) (court may take judicial notice of its own appellate records). Nor is there any basis in logic or the record to believe the jury ever saw these accomplice instructions from Davis's trial, beginning days after Defendant's trial ended. Obviously, that set of instructions could not have been given to the jury in Defendant's case because it *did not exist* at the time the Defendant's jury retired to deliberate. And the record shows that the verdict forms returned by the jury in Defendant's case had Defendant's name on them, matching the ones in the dirty set, which did not contain any accomplice language, and are not the verdict forms from the set of Davis's instructions. The only reasonable explanation for the presence of Davis's instructions in Defendant's files is that they were simply misfiled after both trials were over, a mistake likely resulting from the fact that the trials were conducted close in time and by the same judge and courtroom staff. Defendant's argument that the jury was erroneously instructed

on an accomplice theory that Defendant acted with himself is entirely misplaced and without merit.[4]

**<u>Sentencing</u>**

Defendant contends the trial court plainly erred by entering a written sentence of 15 years imprisonment on count five, which is materially different from the oral pronouncement of 5 years imprisonment on that count. Defendant requests remand for the limited purpose of entering a *nunc pro tunc* order to correct the term of years on count five only. The State contends that the oral pronouncement is so ambiguous—stemming from an error in the way the sentences on all the counts were ordered to be served—that we should vacate the entire sentence and remand for resentencing on all counts. We conclude that remand is unnecessary and we may correct the mistakes in the written judgment ourselves to reflect the unambiguous sentence imposed by the court in its oral pronouncement.

In general, where an oral pronouncement of a defendant's sentence is materially different than the written sentence, the oral pronouncement controls if it is unambiguous. *Johnson v. State*, 446 S.W.3d 274, 276 (Mo. App. E.D. 2014); *Robinson v. State*, 540 S.W.3d 445, 448 (Mo. App. E.D. 2018). "In determining whether the oral pronouncement and written sentence are materially different, the first step is to determine what the oral sentence actually was." *State v. Lazar*, 182 S.W.3d 578, 579–80 (Mo. App. E.D. 2005) (internal quotation marks and citation omitted). Where the oral pronouncement is

---

[4] At oral argument, the opposite argument was advanced. Counsel tacitly acknowledged that no accomplice language positing Defendant had acted with himself was ever actually submitted to this jury, which completely defeats the very premise of this point as it is framed in the brief. Instead, counsel claimed that the lack of *any accomplice language* in the verdict-directors was a plain error requiring a new trial. We will not consider this claim raised for the first time at oral argument. *See, e.g., Knight v. Con–Agra Foods, Inc.*, 476 S.W.3d 355, 359 n.3 (Mo. App. W.D. 2015).

ambiguous or silent on a particular issue, we examine the entire record to determine if the oral sentence can be unambiguously ascertained. *Id.* at 580; *see also Robinson*, 540 S.W.3d at 448; *see also Johnson v. State*, 938 S.W.2d 264, 265 (Mo. banc 1997).

> The court's oral pronouncement of Defendant's sentences was as follows:

> So, it is the order and judgment and sentence to count two, assault in the first degree, the defendant is sentenced to 15 years in the Missouri Department of Corrections.

> As to count four, armed criminal action, it is the order, judgment, and sentence of this Court the defendant be sentenced to 15 years to armed criminal action to run concurrent with count two.

> As to count five, unlawful use of a firearm shooting at a motor vehicle, it is the order and judgment and sentence of this Court the defendant be sentenced to 5 years to run consecutive with count two and four.

> As to count six, armed criminal action, it is the order and judgment and sentence of this Court defendant be sentenced to 15 years in the Missouri Department of Corrections to run concurrent with the counts five, four, and two for a total sentence of 30 years in the Missouri Department of Corrections.

There is nothing ambiguous about the terms of years imposed on each count in this pronouncement. Also, it is clear that Defendant would first serve the concurrent 15-year terms on counts two and four, then serve the consecutive 5-year term on count five. But there is some question as to how the 15-year term on count six is to be served. The court pronounced that the sentence on count six was to run concurrent with all three of the other counts, but it is technically impossible for that sentence to be served concurrently with both the concurrent 15-year terms on counts two and four *and* the consecutive 5-year term on count five. "A criminal sentence in Missouri can only run concurrently with another sentence if the two sentences are running, in whole or in part, at the same time." *Kline v. State*, 437 S.W.3d 290, 294–95 (Mo. App. W.D. 2014) (noting BLACK'S LAW DICTIONARY

definition of "concurrent" as "running together, simultaneous, acting in conjunction, and existing together"). Because the sentences on counts two and four are themselves not running at the same time as the sentence on count five, count six can only run either at the same time as counts two and four *or* at the same time as count five. Each of those alternative scenarios leads to a different result. If the count six is served concurrently with counts two and four, then Defendant would complete all three of the 15-year terms on those counts at the same time and thereafter would serve the consecutive 5-year term on count five, for a total of 20 years. If, on the other hand, count six is served concurrently with count five, then by virtue of being served at the same time as count five—i.e., consecutively to counts two and four—it would necessarily be served consecutively to counts two and four. Thus, after completing the concurrent 15-year terms on counts two and four, Defendant would thereafter serve the concurrent terms of 5 and 15 years on counts five and six respectively. After completing the longer of those two unequal concurrent terms as he must, Defendant would serve a total of 30 years under this second scenario. *See generally State v. Crenshaw*, 852 S.W.2d 181, 190 (Mo. App. S.D. 1993).

Without further explanation, this variance in possible outcomes would render the oral pronouncement of the manner in which the sentences are to be served ambiguous. But when we review the entire record, it leaves no doubt that the trial court intended for Defendant to receive a total sentence of 30 years as it expressly stated at the conclusion of its oral pronouncement. This Court has, in similar situations, relied on a trial court's statement as to the aggregate number of years to be served to clarify an otherwise illogical pronouncement of how sentences are to be run. For instance, in *State v. Weaver*, the trial court had orally pronounced that one of the counts would run consecutively to the other

10

counts *and to itself*, resulting in an impermissible infinite loop of imprisonment terms. 475 S.W.3d 695, 699 (Mo. App. E.D. 2015). On appeal, we concluded that, based on the trial court's oral announcement that the total term of imprisonment was 75 years, it could not have been the trial court's intention to impose a never-ending sentence on that count by running it consecutive to itself. *Id.* at 689-99; *see also* St*ate v. Chambers*, 330 S.W.3d 539, 546 (Mo. App. E.D. 2010) (relying on oral pronouncement of total 30–year sentence to correct written judgment running counts consecutive to themselves). Here too, the court's mistake in running count six in a way that is technically impossible—because it is run concurrently with multiple counts that themselves are running at different times—is clarified by the court's announcement that the total term of imprisonment here is 30 years. The only one of the two possible manners of running count six described above that achieves the court's desired result of 30 years in prison is the one in which count six is run concurrently with count five and, necessarily then, consecutively to counts two and four. Because the record clearly demonstrates that this was the court's intent, we deem the following to be the court's unambiguous oral pronouncement of Defendant's sentence: on count two, 15 years imprisonment; on count four, 15 years imprisonment to run concurrently with count two; on count five, 5 years imprisonment to run consecutively to counts two and four; and on count six, 15 years imprisonment to run concurrently with count five and consecutively to counts two and four.

Now that we know what the oral sentence actually was, we can turn to whether it is accurately reflected in the written judgment. On counts two and four, the judgment correctly reflects the oral pronouncement of 15 years be served concurrently with each other. On count five, the judgment incorrectly states that the term is 15 years, which is

materially different than the unambiguous oral pronouncement of 5 years on count five, and the oral pronouncement therefore prevails. But the judgment correctly reflects that count five is to run consecutively to counts two and four. On count six, the judgment correctly reflects the term of 15 years and that it is to be served concurrently with count five, but it fails to specify that it is to run, like count five, consecutively to counts two and four. Because we have found the court's unambiguous intent in its oral pronouncement was to run count six consecutively to counts two and four and concurrently with count five to achieve an aggregate sentence of 30 years, the oral pronouncement as to how count six is to be served prevails. We have also identified, *sua sponte*, a clerical error in another portion of the judgement, in which a box indicating that Defendant pled guilty to count five is mistakenly checked, instead of the correct box indicating that he was found guilty on that count by a jury.

We may correct all of these errors in the written judgment without remand. *See State v. Wilson*, 489 S.W.3d 349, 358 (Mo. App. E.D. 2016) (modifying judgment on appeal to "999 year term" to correctly reflect oral pronouncement of term of "life"); s*ee Weaver*, 475 S.W.3d at 699 (modifying judgment on appeal to eliminate reference to count running consecutive to itself, resulting in infinite sentence, to correctly reflect oral pronouncement of a total term of 75 years); *see also State v. Parsons*, 409 S.W.3d 486, 487 (Mo. App. W.D. 2013) (modifying judgment on appeal to correct mis-checked box regarding disposition by guilty plea).

### Conclusion

Point I is granted, and all other points are denied. The judgment and sentence is modified as follows: (a) Defendant was found guilty by a jury on count five; (b) on count

five, Defendant was sentenced to 5 years in prison to be served consecutively to the sentences on counts two and four; and (c) on count six, Defendant was sentenced to 15 years in prison to be served concurrently with the sentence on count five and consecutively to the sentences on counts two and four.

The judgment and sentence is affirmed as modified herein.

ROBERT G. DOWD, JR., Judge

Robert M. Clayton III, P.J. and
Roy L. Richter, J., concur.